## MISSOURI, O. & G. RY. CO. v. STATE *et al.*

### No. 2179.    Opinion Filed February 9, 1911.

**RAILROADS—Corporation Commission—Orders Locating Stop Stations.** The Corporation Commission is vested with authority to require a railway company to locate and construct a side track and establish a prepaid and stop station at a point on its line reasonably required by public convenience or necessity.

(Syllabus by the Court.)

*Appeal from the Corporation Commission.*

From an order of the Corporation Commission requiring the Missouri, Oklahoma and Gulf Railway Company to establish a stop station and side tracks at Kemp City, the company appeals. Affirmed.

*E. R. Jones* and *C. G. Hornor*, for appellant.
*Chas. West*, Atty. Gen., for appellees.

TURNER. C. J. On complaint of about 50 petitioners, residents of Kemp, Oklahoma, filed before it September, 8, 1910, the Corporation Commission, after taking the testimony preserved in the record, entered the following:

"OPINION AND ORDER.

"The complaint in this case asks for the construction of side tracks and for a station at a point on the Missouri, Oklahoma & Gulf Railway in Bryan county, to be known as Kemp City. The proposed location is about a mile and a fourth north of the Red river, which forms the south boundary of Bryan county, and of the state of Oklahoma.

"The complaint sets forth that the Missouri, Oklahoma & Gulf has extended its line from Durant, Oklahoma, to Denison, Texas, running within a distance of two miles of the present town of Kemp. The complaint states that Kemp is a town of about 500 inhabitants in a well-settled farming community, and that the Missouri, Oklahoma & Gulf Railway has provided for said town and community no station for loading and unloading freight nearer than its station called Achille, seven and one-half miles from

116 SUPREME COURT OF OKLAHOMA.

Missouri. O. & G. Ry. Co. v. State *et al.*

Kemp across hills over which there are no well-traveled roads. The complaint specifically asks for an order requiring the building of a switch and the establishing of a prepaid station at the point of the M., O. & G. Ry. Company where the main-traveled country road, running from the old Bloomfield Ferry on the Red river to the town of Kemp and beyond, crosses said railroad. The petition is signed by about fifty residents of the community seeking th's accommodation.

"The defendant company did not file an answer in this case, but appeared to defend and oppose the granting of the order prayed for at a hearing held at Hugo, Oklahoma, * * * October 5, 1910.

"The evidence in support of the petition shows that the population of the community to be accommodated by the proposed station is approximately as stated in the complaint, being from 400 to 500 persons. It appears that the station of Achille is about seven miles north of the proposed station of Kemp City, and that the proposed station of Kemp City is at the southernmost point of the defendant company's railroad at which a station can reasonably be erected within the state of Oklahoma. The evidence shows that the town of Kemp, which has existed for several years, at a point two miles east of the proposed town site of Kemp City, has bank deposits of from $25,000.00 to $30,000.00; an annual volume of business ranging from $140,000.00 to $200,000.00; that it is the market for over 416,000 [4,000 to 6,000] bales of cotton annually; that it ships 400,000 to 500,000 bushels of corn annually, and that it is the trade center for an area extending some 15 or 17 miles east and several miles north and south, its area including seven saw mills which could use the proposed town of Kemp City as a shipping center. The evidence shows that the town site proposed contemplates the donation of a business or residence lot to any resident of the present town of Kemp who will move to Kemp City and erect a building of any character on said donated lot, and that the population of the present town of Kemp is practically a unit in favor of the proposed removal to the railroad.

"The evidence shows that it would not be practicable to establish a town nearer the Red river than the proposed town site of Kemp City, for the reason that the land lying closer to the river is within the overflow area, and that water has been known to reach a point within a thousand feet of the proposed side track location at Kemp City.

"The evidence further shows that the trade of the territory tributary to the present town of Kemp now goes to the city of Denison, Texas, and the smaller portion finding its way to Durant, Oklahoma. The Denison and Durant outlets for this trade territory are about equal distances from the town of Kemp, but the trade favors the Texas market, for the reason that roads are better in that direction, free carriage [ferriage] being provided by the business community of Denison, and the market in the Texas town being at times slightly more favorable than at Durant.

"The evidence further shows, not conclusively, but to an extent that inclines the commission to credit the contention, that the business community of Denison, Texas, and certain promoters of the Missouri, Oklahoma & Gulf Railroad have a tentative understanding that there will be no station on the defendant company's railroad nearer to Denison than the station of Achille, above referred to. This impression finds support in the evidence that the business community of Denison offered to provide a substantial cash bonus to secure the M., O. & G. Ry. Company, and that the railway company has intended and does intend to construct a wagon bridge across the Red river at a point at or near the location of its railway bridge across said river.

"The commission considers the evidence conclusive on the proposition that the trade community of Kemp, whether it removes to the proposed location of Kemp City or remains where it is, should be provided with facilities for which the petition prays at the location of the proposed Kemp City town site.

"The defendant railway company does not introduce any evidence controverting the representations as to the volume of business that can be offered by the proposed town of Kemp City. Its defense is based entirely upon the contention that the grade of this railway at the point where such siding and stop for trains is demanded is such that trains could not be started if stopped at such point. The witnesses for the railway company, including its chief engineer, testified that the grade at said point is four-tenths of one per cent., and that by reason of a curve at this point the resistence to traffic at this point is equal to that of a grade of five-tenths of one per cent.

"The commission gives great weight to the opinions of expert witnesses, to which class it considers that consulting engineers of railways belong. A part of the evidence in this case, however, is the profile of the defendant company's railway, filed with this com-

mission as required by law. An inspection of this profile shows other points on the line of the defendant company where stations have been established on grades equally as heavy as the grade at the proposed location at Kemp City. The profile shows that at the station of Atwood on said railroad the defendant company has a 400-foot siding constructed on a grade of .41 of one per cent.; thence south 1,600 feet at .6 of one per cent.; thence south 1,600 feet at .52 of one per cent.; thence south for approximately 3 miles at a grade varying but slightly either above or below six-tenths of one per cent.

"The grade of the defendant company's track at and south from Atwood, taking into consideration the fact that this grade falls within the same division as the Kemp City proposed location, appears to the commission to effectually dispose of the defendant's contention that the proposed side track at Kemp City is impracticable from an engineering standpoint.

"Therefore, after a careful consideration of all the evidence in this case, the commission is of the opinion and orders that the defendant, the Missouri, Oklahoma & Gulf Railway Company, locate and construct a side track and establish a prepaid and stop station at Kemp City; said side track to be suitable in length to serve the needs of the community.

"This order shall be in full force and effect from and after the 15th day of December, 1910."

—From which the M., O. & G. appealed.

No question of law was raised at the hearing and none is presented in the briefs. Properly conceding the order to be *prima facie* just, reasonable, and correct, and assuming the burden of showing to the contrary, appellant assails the reasonableness of the order only.

Holding as we did in *A., T. & S. F. Ry. Co. v. State et al.,* 27 Okla. 565, that the Corporation Commission is without authority to arbitrarily require a railroad company to establish stations and switching facilities at places not required by public convenience, we hold here that said commission is vested with authority to require appellant to establish such facilities as are petitioned for at places reasonably required by public convenience or necessity. Assailing the order on the ground mentioned, no very clear con-

tention appears on the part of appellant. While it assigns for error that (1) the order is unreasonable and unjust, (2) that it is not sustained by the evidence, and (3) that it is contrary to law, it fails to state specifically wherein, so that we can fairly ascertain, examine, and decide the question involved. For the reason that we have read the record, we do not concur with the contention that there does not appear to be any real need of a station at Kemp City, or that an examination thereof will show that petitioners are promoters of a town-lot scheme for private gain and desire to secure the facilities petitioned for as an aid in selling lots. Rather are we of opinion that they are engaged in a laudable effort to keep the town of Kemp, where they live and do business, from being as they say, "wiped off the map." That such will be the inevitable result of the forces now working and seemingly set in motion by appellant, is apparent. In pushing its road southward through Achille, crossing Red river at Speese, Texas, and from thence to Denison and beyond, appellant's line, after leaving Kemp two miles to the east, practically splits in two vertically a great "V" of country made by a bend of that river, and passes out of the state at or near its point. In all this bend, and for miles around Kemp, the country is agricultural and "as rich as any in the state." Denison is nine miles from the state line, Red river, a navigable stream. To make the trade of this country tributary to it, Denison, when subscribing to appellant's road, it seems, arranged with it to refrain from establishing a town on its proposed line north of said river nearer than Achille, and also with two ferries for free ferriage for persons with teams from said territory, trading in Denison. In constructing its line across the river, appellant is also establishing a toll bridge, presumably to put the ferries out of business and, with Denison, enjoy that tide of trade. In a measure to divert and retain this trade, petitioners, in order to afford said trade more convenient shipping facilities than they now get by being compelled to go into Texas, and, obviously, also, for their own use, conceived the idea of moving, in effect, the town of Kemp to a place called Kemp City, on appellant's line, and to

that end have platted it, offered inducements calculated to secure its removal there, and have asked and the commission has granted the order in question. Said order does not contemplate the erection of a depot there, either freight or passenger, nor indeed the erection of any structure by appellant, nor the placing of an agent there. It contemplates only the construction of a side track, at a cost and inconvenience so inconsiderable that the same is not complained of, in order that prepaid freight may be loaded and unloaded there.

As stated by the commission, the sole objection before it to this order was that the grade of appellant's road at Kemp City is such that trains could not be started and stopped there, and that an order requiring them so to do would be unreasonable. This objection is untenable, for the reason stated by the commission—and so we find—that the profiles in evidence show that at least one station on equally heavy grades as those at Kemp City has been established on appellant's line. Neither is it tenable to say that the order is unreasonable in that it requires a station to be located four and one-half miles from Achille and one and one-half miles from Speese, Texas, making three stations within six miles, for the reason the evidence shows that the proposed location of Kemp City is the first high ground available for the facilities ordered, northward from Red river on appellant's line, not subject to overflow. As there is little in the record to induce us to believe that appellant intends to establish adequate and convenient shipping facilities at the north end of the bridge at Speese, and as we can see that, in the absence of the facilities ordered, shippers from the territory in question will be compelled to continue to cross a wide marshy bottom and a navigable stream and unload for shipment in another state, we are of opinion that the order is reasonable and must stand.

Affirmed.

DUNN, HAYES, and KANE, JJ., concur; WILLIAMS, J., not participating.