Argued December 12, decided December 26, 1911.

## SOUTHERN PAC. CO. v. RAILROAD COMMISSION.

[119 Pac. 727.]

CONSTITUTIONAL LAW—RAILROADS—REGULATION OF RAILROADS—FOURTEENTH AMENDMENT.

1. The legislature has power to enact legislation requiring railroad corporations to furnish reasonably adequate facilities for the transportation of freight and passengers; such legislation not being contrary to the Fourteenth Amendment of the U. S. Constitution.

RAILROADS—TRANSPORTATION FACILITIES—DUTY TO FURNISH.

2. A railroad corporation's duty to furnish reasonable facilities for the transportation of passengers and freight is one which has always existed, and is not created by statute.

RAILROADS—ADEQUATE SERVICE—STATUTES—RAILROAD COMMISSION—"SERVICE."

3. Laws 1907, p. 71, § 12 (Section 6887, L. O. L.), requires every railroad to furnish reasonably adequate service, equipment, and facilities; and Laws 1907, p. 86, § 30 (Section 6908, L. O. L.), provides that the Railroad Commission is authorized, if it finds any service inadequate, to direct one that is adequate. *Held,* that the word ."adequate" in such section did not presuppose that some service had existed, but was applicable to a case where the service was insufficient, because never established; and hence such sections conferred on the Railroad Commission, power to compel a railroad corporation to install new facilities.

RAILROADS—REASONABLE FACILITIES—INSTALLATION—EVIDENCE.

4. In an action to set aside an order of the Railroad Commission, evidence *held* to warrant an order of the Commission, requiring a railroad company to install a spur on its main line at a certain town, where the inhabitants were compelled to go to another town, a mile and a half away, before they could get railroad service.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE McBRIDE.

This is a suit by the Southern Pacific Company, a corporation, against the Railroad Commission of Oregon, to enjoin defendant from putting into effect its order, requiring plaintiff to construct and maintain a spur on its main line at the town of Edenbower, in Douglas County.

In December, 1909, certain citizens of Edenbower filed a complaint with the Railroad Commission, setting forth that a flag station for local passenger trains and a siding for freight and express trains were necessary, and asking that the defendant be required to install them. After hearing the testimony of the complainants and the defendant, the Railroad Commission denied the prayer of the complainants for a flag station and siding, but ordered the railroad company to construct a spur sufficient to accommodate three cars.   Thereupon plaintiff brought this suit to set aside such order.   Upon trial in the circuit court, the order of the Commission was sustained, and plaintiff appeals.

The following sections of the Railway Commission Act relate to the matters here in controversy, and are quoted, so far as applicable:

Section 6887, L. O. L.   "Every such railroad is hereby required to furnish reasonably adequate service, equipment and facilities, and the charges made for any service rendered or to be rendered in the transportation of passengers or property or for any service in connection therewith, or for the receiving, switching, delivering, storing, elevation, and transfer in transit, ventilation, refrigeration, or icing or handling of such property, or for union depot or terminal facilities, shall be reasonable and just, and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful."

Section 6897.   "It shall be the duty of every railroad to provide and maintain adequate depots and depot buildings, and clean and suitable toilet rooms, or buildings, at

its regular stations where an agent is maintained, for the accommodation of passengers, and said depot buildings shall be kept clean, well lighted and warmed, for the comfort and accommodation of the traveling public.    All railroads shall keep and maintain adequate and suitable freight depots, buildings, switches, spurs and side tracks for the receiving, handling, and delivering of freight transported or to be transported by such railroads. * *"

Section 6908.    "Whenever, upon an investigation made under the provisions of this act, the Commission shall find any existing rate or rates, fares, charges, or classifications, or any joint rate or rates, or any regulation or practice whatsoever affecting the transportation of persons or property, or any service in connection therewith, are unreasonable or unjustly discriminatory, or any service is inadequate, it shall determine and by order fix a reasonable, rate, fare, charge, classification, or joint rate to be imposed, observed, and followed in the future in lieu of that found to be unreasonable or unjustly discriminatory, or inadequate, as the case may be, and it shall cause a certified copy of each such order to be delivered to an officer or station agent of the railroad affected thereby, which order shall of its own force take effect and become operative twenty days after the service thereof.    All railroads to which the order applies shall make such changes in their schedule on file as may be necessary to make the same conform to said order, and no change shall thereafter be made by any railroad in any such rates, fares, or charges, or in any joint rate, or rates, without the approval of the Commission.    Certified copies of all other orders of the Commission shall be delivered to the railroads affected thereby in like manner, and the same shall take effect within such time thereafter as the Commission shall prescribe."

By Section 6910, a railway company is authorized to commence a suit in equity to vacate an order of the Railroad Commission, if the same is unlawful or unreasonable; and in such suit the burden of proof is upon the plaintiff to show the unlawfulness or unreasonableness of the order "by clear and satisfactory evidence."

AFFIRMED.

For appellant there was a brief over the names of *Mr. George G. Bingham, Mr. Ben C. Dey, Mr. Dexter Rice, Mr. William D. Fenton* and *Mr. James E. Fenton,* with an oral argument by *Mr. William D. Fenton.*

For respondent there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. Roy F. Shields,* Assistant Attorney General, and *Mr. Charles L. McNary,* with an oral argument by *Mr. Crawford.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The validity of the order of the Railroad Commission is assailed upon three grounds namely:   (1) That the legislature is without power to authorize the Commission to direct the building of new spurs or side tracks; (2) that, conceding that the legislature had such power, it has not delegated it to the Commission; and (3) that the exercise of the power in the present instance is so unreasonable that it is void, or at least that the order should be reversed upon the facts shown to exist.

1. Taking these propositions in the order stated, we are of the opinion that the legislature has power to enact legislation authorizing the Railroad Commission to require railroad corporations to furnish reasonable and adequate facilities for the transportation of freight and passengers; and that such legislation is not contrary to the fourteenth amendment to the Constitution of the United States.

One of the primary duties, recognized by all civilized governments, is that of providing their citizens with facilities for public travel by means of roads, canals, and other similar structures.   In the progress of civilization and the increase of public travel, it became apparent that the public could be better served, and public highways more readily built and operated, by allowing private enterprise to supplement the facilities provided by general taxation,

and toll roads were authorized, and corporations, endowed with governmental authority to exercise the right of eminent domain, were authorized to construct such highways, receiving in the way of toll from the traveling public sums which, in some respects, were deemed a substitute for those previously paid by them in the form of taxes. Later, with the application of steam to the purposes of travel by land, the railroad succeeded the toll road. It is true that the railroad differed from the toll road, in that its proprietors furnished, not only the road, but the vehicle which carried the traveler, but, nevertheless, remained a public road; and the corporation which carried the freight or passengers continued to perform a public and governmental function, namely, that of expediting public travel. For these reasons it has always been held that railroads are public highways: Mills, Em. Dom. § 14; *Olcott* v. *Supervisors,* 16 Wall. 678 (21 L. Ed. 382) ; *Railroad Commissioners* v. *Portland & O. C. R. Co.,* 63 Me. 269 (18 Am. Rep. 208). In respect to their functions and powers, railway corporations are differentiated in a marked degree from other corporations. No mining, merchandising, or banking corporation can use the authority of the government to condemn a rod of land—one of the highest attributes of sovereignity. The railway corporation is invested with the powers of the sovereign, because it is a trustee and agent of the sovereign, and therefore must exercise its public functions under the supervision of its superior. Its public duties are ministerial, namely, to carry out the objects of its creation with reference to what public necessity and convenience require, and the right to compel this must of necessity reside in its creator, the State.

2. The duty of a railway corporation to provide reasonable facilities for the transportation of passengers and freight is one which always existed, and not one created

by statute.   The statute only provides a method by which. these pre-existing duties may be enforced.   The court. well stated, in *Pittsburg, C., C. & St. L. Ry. Co.* v. *Railroad. Commission of Indiana,* 171 Ind. 201 (86 N. E. 333), that "in one sense of the term, appellant's property is private,. and as such it is within the protection of the federal and state constitutions; but such property is subject to due regulation, since it has been devoted to a public use, particularly since that use is, in a limited sense of the term,. for the purposes of a public highway. *Lake Superior R.. Co.* v. *United States,* 93 U. S. 442 (23 L. Ed. 965).   As. was said in *Barton* v. *Barbour,* 104 U. S. 126, 135 (26. L. Ed. 672) : 'A railroad is authorized to be constructed more for the public good to be subserved than for private gain.   As a highway for public transportation, it is a. matter of public concern, and its construction and management belong primarily to the commonwealth, and are only put into private hands to subserve the public convenience and economy; but the public retain rights of vast. consequence in the road and its appendages, with which neither the company nor any creditor or mortgagee can interfere.   They take their rights, subject to the rights of the public, and must be content to enjoy them in subordination thereto.'   While railroad companies are chartered for the purpose of affording due facilities of transportation, yet at the common law there are certain obligations of an imperfect character which have been left to such carriers, upon the presumption that their business interests will cause them sufficiently to discharge such duties, as in the building of interchange freight tracks, the erection of depots, and the like.   It is clear, however, that the legislature, which possesses the right to make all manner of reasonable and wholesome laws within constitutional limits, may, to the extent of that which is reasonable, convert such imperfect obligations into absolute legal

duties." See, also, *State* v. *R. V. R. Co.,* 17 Neb. 647 (24 N. W. 329: 52 Am. Rep. 424) ; *Missouri, C. & G. Ry.* v. *State,* 28 Okl. 115 (113 Pac. 930) ; *Railroad Commission* v. *Portland & O. C. R. Co.,* 63 Me. 269 (18 Am. Rep. 208) ; *Railroad Commission* v. *Kansas City So. Ry.,* 111 La. 134 (35 South. 487) ; *Pecos & N. T. Ry. Co.* v. *Railroad Commission,* (Tex. Civ. App.) 120 S. W. 1055.

3. The second proposition, that, conceding that the power to compel a railway corporation to install new facilities exists, the legislature has not delegated it to the Commission, is, in our opinion, negatived by the terms of the act. Section 12 of chapter 53, Laws of 1907 (Section 6887, L. O. L.), requires every railroad to furnish "reasonably adequate service, equipment and facilities." There is nothing in the language used to indicate that it is intended to apply to places or stations then established, or that its application is intended to be limited in any way, except by the reasonable needs of the public. By Section 30 of the same act (Section 6908, L. O. L.), the Commission is authorized, if it finds any service inadequate, to direct one that is adequate. We do not agree with counsel that the word "inadequate," as used in this and other sections, presupposes that some service theretofore had been established or provided at the particular place which is the subject of investigation. Counsel's proposition is that no service or facilities are "not inadequate" service or facilities, but this method of reasoning proves either too much or too little.

It is claimed by plaintiff that the community of Edenbower is already provided with sufficient and adequate service and facilities by the depot and tracks at Roseburg, a mile and a half away. The Commission has found that a service at that distance is under the conditions, inadequate to the needs of this community. Plaintiff does not claim that it has never furnished any service or facil-

ities, but insists that it has done both.   The inhabitants of Edenbower admit that plaintiff has furnished facilities, and that it has availed itself of them, but claim that those furnished are situated at so remote a distance from the seat of their industries that they are inadequate.   We are of the opinion that the words "adequate" and "inadequate facilities" are used with reference to the wants of a community, rather than with reference to any particular station.   Any other construction would permit a railway company to build a cannon-ball line through the whole State, and operate it with all its attendant inconveniences, without having a single station, except at terminals.   It may be said that the interest of the corporation in obtaining business would prevent it from doing this, and, in the illustration used, that would probably be the case; but in an instance like the present one it is quite probable that the company, in any event, would get the largest part of the Edenbower business through the Roseburg station. That community would be put to the additional expense and trouble incident to the longer haul by wagon to and from Roseburg, and the company would get a large part of the business without incurring the additional expense of installing a spur.

Taking the act as a whole, we are of the opinion that it was the intent of the legislature to cover and include all those duties which a railway corporation, as a trustee of the State, owes to the public; that the language used is adequate to carry out that intention; and that the order made was one within the power of the Commission.

4. We will now consider the third proposition, namely, the reasonableness of the order, viewed in the light of the facts.   The statute provides that such order shall be deemed *prima facie* reasonable, and shall not be set aside, except upon clear and satisfactory evidence.   We understand this to mean no more than that the Commission,

being composed of experts in the line of work intrusted to them, and having opportunities of personal examination and investigation not available to the court, should be presumed to have acted reasonably and fairly. We do not understand that it is intended, by the language adverted to, to impose upon a plaintiff in a suit of this character the necessity of producing a greater amount of proof to sustain its case than would be required to overturn the finding of any other select body of experts, charged with the duty of ascertaining a fact by testimony and actual physical examination of conditions. The office of railroad commissioner is one of great responsibility, and charged with difficult and delicate functions. It involves, to some extent, the task of directing a railway corporation to use its funds for particular purposes of improvement, or for the betterment of its service, without its consent, and sometimes contrary to its wishes. That such a power should be exercised with extreme caution goes without saying, and the infrequency of appeals to this court from such decisions indicates that the commissioners, selected by the people of this State to see that the rights of the public in matters of transportation are properly protected, have performed that duty fairly and faithfully. Giving to the decisions of this body, in the language of the United States Supreme Court, in *Illinois Cent. R. Co.* v. *Interstate Commerce Commission,* 206 U. S. 441 (27 Sup. Ct. 700: 51 L. Ed. 1128), "the weight due to the decisions of a tribunal authorized by law and informed by experience," we are unable to say that the order in question is unreasonable.

The proceedings before us show that the investigation was held near the place of the controversy, so that the commissioners had an opportunity, which we have not had, to view the premises. Testimony was taken on both sides, and the request for a flag station was disallowed. It is evident that there was no intent to be oppressive,

and the order made does not seem to impose any great financial burden upon the company. It is true that there does not appear to be a great amount of traffic at this point at present, but there seems to be enough to justify the conclusion that the laying down of 300 feet of track will not require the plaintiff to do the business at Edenbower at a loss, or materially to diminish its profits therefrom. In coming to this conclusion, we do not take into consideration the chances for future increase of business by the impetus that may be given to the industries of Edenbower by improved facilities for transportation, because we do not conceive that either the Commission or this court should direct increased facilities to be installed for the purpose of making traffic, not shown to be potentially in existence. In other words, the power of the Commission should be exercised to facilitate actual business, not speculatively to create business where none exists. Giving to the investigations of the Commission their due weight, and taking into consideration the number of inhabitants whose shipping would naturally gravitate to Edenbower because of its accessibility, it seems not unreasonable to say that there is business enough in sight to justify the small outlay required by the Commission. If, in fact, it should transpire that such is not the case, the Commission could, and no doubt would, revoke its order, and the rails and ties would be available for use elsewhere.

It is contended that the construction of this spur, at the point designated, constitutes a danger to public travel. But it appears that other spurs in the vicinity are constructed upon grades no less than this, and while every spur and switch on a road tends in some degree to increase the risk of travel, and is, in a remote degree, an element of danger or delay, we apprehend that these dangers are not of any considerable magnitude.

The decree of the circuit court is affirmed.

AFFIRMED.