**BOOTH–KELLY LUMBER CO. v. SOUTHERN PACIFIC CO.**

**SOUTHERN PACIFIC CO. v. BOOTH–KELLY LUMBER CO.**

No. 12340.

United States Court of Appeals
Ninth Circuit.

June 28, 1950.

Rehearing Denied Aug. 11, 1950.

904

Veazie, Powers & Veazie and James Arthur Powers, Portland, Or., for Booth-Kelly Lumber Co.

Koerner, Young, Swett & McCulloch, James C. Dezendorf, Alfred H. Corbett, all of Portland, Or., for Southern Pacific Co.

Before HEALY, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

This was an action by Southern Pacific Company, a Delaware Corporation, against Booth-Kelly Lumber Company, an Oregon Corporation, seeking to recover sums which it had paid to settle a judgment against it by one Mack D. Powers, and for which Southern Pacific Company asserted Booth-Kelly Lumber Company was obliged to indemnify it.

On February 8, 1945, Southern Pacific Company was moving a train of cars over an industrial track, constructed pursuant to an agreement between it and Booth-Kelly, over the latter's premises at Springfield, Oregon. Booth-Kelly's servants had left a wood cart so near the track that the nearest corner of the cart was only 42 inches from the nearest rail, notwithstanding a covenant in the agreement that "structures, material, poles or other obstructions" on the premises should provide a "minimum side clearance of six feet" from the nearest rail. As Mack D. Powers, brakeman on the train, then undertook to climb out of the door of the side-door caboose, he was caught between the caboose and the wood cart.

When Powers brought suit against Southern Pacific to recover damages for his injuries under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., Southern Pacific gave notice thereof to Booth-Kelly with tender of defense and demand that such defense be undertaken by Booth-Kelly, because, the notice stated, it was its

position that the injuries and damages were due to "the acts and/or omissions of Booth-Kelly Lumber Company * * * and were due to breach" of the contract mentioned. The tender was declined. Powers recovered a substantial judgment against Southern Pacific which the latter settled by payment of the sum of $44,699.46.[1] Southern Pacific's expenditures for costs and attorneys' fees amounted to $1869.63 more. Southern Pacific then filed its complaint in the present action, seeking recovery of the aggregate of these two sums.

The agreement referred to, and upon the construction of which decision in this case must in large part turn, was dated June 30, 1941. In it Southern Pacific was referred to as "Railroad" and Booth-Kelly as "Industry". It provided that Railroad should maintain and operate the spur track, approximately 2257 feet in length, and serve Industry thereon, and that it should be under control of Railroad which "shall have the right to use the same when not to the detriment of Industry". After providing that Industry would comply with the minimum clearances previously mentioned, the agreement contained a paragraph 7, providing for indemnity to Railroad in certain cases. The portion of this paragraph material here is as follows: "Industry also agrees to indemnify and hold harmless Railroad for loss, damage, injury or death from any act or omission of Industry, its employes or agents, to the person or property of the parties hereto and their employes, and to the person or property of any other person or corporation, while on or about said Track; and if any claim or liability, other than from fire, shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."

The agreement authorized Railroad to disconnect the track if Industry ceased to do a substantial business on the track, or if Industry failed to perform its covenants under the agreement.

In prosecuting its complaint against Booth-Kelly, Southern Pacific asserted, as it does on this appeal, that it is entitled to recover the full amount of its outlay on account of the Powers judgment for three separate and independently sufficient reasons: (1) In leaving its wood cart within 42 inches of the track Booth-Kelly breached its agreement respecting minimum clearances. In consequence of this breach Powers was injured and as a result Southern Pacific was required to pay these sums. For these consequences which naturally followed from Booth-Kelly's breach, it should pay damages. (2) By the portion of paragraph 7, quoted above, Booth-Kelly agreed "to indemnify and hold harmless [Southern Pacific] for loss, damage, injury or death from any act or omission of [Booth-Kelly], its employes or agents, to the person or property of the parties hereto and their employes, and to the person or property of any other person or corporation, while on or about said track; * * *." It is said that the duty to indemnify arises directly from this provision, since Southern Pacific's loss arises out of an act or omission of Booth-Kelly. (3) That wholly apart from the terms of the written agreement, since Booth-Kelly was guilty of "active negligence" in placing the cart as it was, and since the negligence of Southern Pacific for which it was held in the Powers case was only "passive negligence" in failing to warn its brakeman of the presence of the cart, the parties were not joint wrongdoers in pari delicto, but the efficient and primary cause of the accident was the negligence of Booth-Kelly, and therefore it is liable to Southern Pacific under the common law rule declared in City of Astoria v. Astoria & Columbia River R. Co., 67 Or. 538, 136 P. 645, 49 L.R.A.,N.S., 404.

On its part Booth-Kelly asserted, and now asserts, that the loss resulted solely from Southern Pacific's negligence; that it was so adjudged in the Powers action, and that the judgment there is res judicata to

1. Prior to paying this sum to Powers, Southern Pacific obtained from Booth-Kelly an agreement that such settlement with Powers should be without prejudice to the rights of the parties here as against each other.

that effect; that the contract was without consideration and void, and to the extent it purported to relieve Southern Pacific of the consequences of its own negligence, it is in any event against public policy and unenforcible; that the loss did not result from any breach of contract by Booth-Kelly, but if there was such breach it was waived by Southern Pacific which is estopped to complain thereof; and that the portions of the contract upon which Southern Pacific relies were modified by custom adopted by the parties in its operation. As more fully stated hereafter, to the extent that these assertions raised questions of fact, the findings of the trial court were against Booth-Kelly.

The court made findings in the course of which it found: "Defendant was negligent in placing and leaving the wood cart within 42 inches from the spur track." "Defendant's negligence in this regard was the active, direct, proximate and primary cause of the injury to plaintiff's employee Powers." "Powers suffered injuries in the amount of $44,000." "Plaintiff suffered loss in the amount of $44,699.46 judgment costs and of $1,869.53 court costs and attorneys' fees, by reason of an act or omission of defendant * * * to an employee of plaintiff while on the industrial track." "The damage to Powers and the liability of plaintiff was the natural or necessary result of defendant's breach of contract." "Some elements of negligence on the part of plaintiff concurred to cause the accident."

As conclusions of law, after holding the spur track agreement valid, and that the claimed defenses of res judicata and waiver had not been maintained, the court concluded: "Defendant is not obligated to pay plaintiff $44,568.99, or any part thereof, independent of the industrial spur track agreement." "Plaintiff is entitled to recover judgment against defendant for the sum of $22,000.00 on the contract, together with its costs and disbursements incurred herein." Judgment was entered accordingly.

The reason for the court's conclusion that recovery should be for no more than $22,-000 is explained in the opinion, in which, after holding that Southern Pacific may recover upon the contract, the court said:

"However, since the railroad was in some measure also at fault which contributed to the accident, judgment is given under the contract for only one-half of the damage." Here the court clearly refers to the last clause in paragraph 7 of the contract which reads: " * * * and if any claim or liability, other than from fire, shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally." The amount awarded was one half of what the court found was the amount of the injuries to Powers.

Both parties have appealed.

In considering the separate theories advanced by Southern Pacific to support its claim for full recovery, we find it unnecessary to pass upon the validity of its first contention, listed above. Whether losses of the kind here suffered by Southern Pacific could be said to be damages which flow from the breach (in respect to maintaining clearance) "in the natural course of events or which may reasonably be presumed to have been within the contemplation of the parties", Smith v. Pallay, 130 Or. 282, 279 P. 279, 281, is a question which might well present difficulties.

We consider more to the point the argument of Southern Pacific based on the provisions of that part of paragraph 7 by which Booth-Kelly expressly agrees "to indemnify and hold harmless Railroad for loss, damage, injury or death from any act or omission of Industry * * * to the person or property of the parties hereto and their employees * * * while on or about said track". This is language which deals specifically with indemnity. We think that the parties must have intended that their obligations relating to indemnity should be defined by the paragraph which specifically refers to that subject. Deep Vein Coal Co. v. Chicago & E. I. Ry. Co., 7 cir., 71 F.2d 963.

We also agree with the court below that the question of liability is not to be determined under any common law obligation apart from the contract. We think it important to examine the rules of the common law in order more accurately to determine the meaning of the written contract.

This we shall develop hereafter. But, since the parties have themselves dealt with the question of indemnity in their written contract, we think it is fair to say that they intended it, rather than some general common law rule, to govern their rights and liabilities in this situation.

This brings us to a consideration of the meaning of paragraph 7. If it contained only that part of the above quoted paragraph down to the semicolon, it would have appeared unquestionably sufficient to require complete indemnity.[2] It is the remainder of this paragraph which the court deemed controlling "since the railroad was in some measure also at fault." [3]

Basic in any determination of the meaning of this whole paragraph is an understanding that when the parties contemplated that there might be claims for indemnity they must have been cognizant of the fact that in the ordinary case the occasion for seeking indemnity would not arise unless the indemnitee had himself been found guilty of some fault, for otherwise no judgment could have been recovered from him. That this is typically true is recognized in the comment under Section 95, Restatement on Restitution, as follows: "In all of these situations the payor is not barred by the fact that he was negligent in failing to discover or to remedy the defect as a result of which the harm was occasioned; in most of the cases it is because of this failure that he is liable * * *

"The fact that the payor knew of the existence of the dangerous condition is not of itself sufficient to bar him from restitution. In many cases it is only because he had knowledge of the condition that he is liable to the person harmed."

If we were to assume that the existence of any negligence on the part of Southern Pacific, without regard to whether it be active or passive, primary or contributory, necessarily threw the case within the last portion of the paragraph (note 3, supra), then one might fairly ask what sort of case must have been contemplated when the parties drew the first portion (note 2, supra), if, as pointed out in the comment quoted, in most cases the liability for which indemnity is sought can arise only because the person claiming indemnity was himself guilty of some negligence?

In approaching a determination of the meaning of this whole paragraph, it appears to us, initially, that each part of the paragraph was intended to cover certain kinds or types of cases, and that each part refers to a situation different from that contemplated by the other. And in view of the fact that in most cases where demand for indemnity arises, the claimed indemnitee must have been found liable by reason of some negligence, we think it extremely unlikely that all such cases were intended to be excluded from the operation of the first portion of the paragraph. Otherwise, this portion of the paragraph would have little or no application to any actual case.

Among the circumstances surrounding the execution of the contract was the state of the common law, and the definition of the common law obligations under which the parties would have been required to function had no such contract been executed. It is fair to assume that the parties had these rules in mind as they considered to what extent they would alter or reaffirm those obligations by their writing.

The common law rules relating to indemnity and contribution as between parties who have been guilty of breaches of duty under circumstances resembling those here involved are expounded in a great number of decided cases, in Oregon and elsewhere. Fairly illustrating the conclusions generally reached are Washington

---

2. This part of the paragraph reads: "Industry also agrees to indemnify and hold harmless Railroad for loss, damage, injury or death from any act or omission of Industry, its employes or agents, to the person or property of the parties hereto and their employes, and to the person or property of any other person or corporation, while on or about said Track; * * * "

3. Following the language quoted in note 2, the paragraph concludes: " * * * and if any claim or liability, other than from fire, shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."

Gas Light Co. v. Dist. of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712; Union Stockyards Co. of Omaha v. Chicago B. & Q. R. Co., 196 U.S. 217, 25 S.Ct. 226, 229, 49 L.Ed. 453, 2 Ann.Cas. 525; and City of Astoria v. Astoria & C. R. R. Co., 67 Or. 538, 136 P. 645, 649, 49 L.R.A.,N.S., 404. Examples of contrasting situations are furnished by the first two of these cases. In the Union Stock Yards case a railroad company delivered a car with imperfect brakes to a terminal company. Both parties failed to discover the defect as might have been done by proper inspection. As a result of the defective brake an employee of the terminal company was injured, and he sued and recovered damages from the terminal company. The latter then sued the railroad company for the amount paid under the judgment. In denying recovery the court said: "In the present case the negligence of the parties has been of the same character. Both the railroad company and the terminal company failed, by proper inspection, to discover the defective brake. The terminal company, because of its fault, has been held liable to one sustaining an injury thereby. We do not think the case comes within that exceptional class which permits one wrongdoer who has been mulcted in damages to recover indemnity or contribution from another." But in referring to what it called the "exceptional class" of cases, the court cited, among others, the Washington Gas Co. case, supra, and said: "Coming to the very question to be determined here, the general principle of law is well settled that one of several wrongdoers cannot recover against another wrongdoer, although he may have been compelled to pay all the damages for the wrong done. In many instances, however, cases have been taken out of this general rule, and it has been held inoperative in order that the ultimate loss may be visited upon the principal wrongdoer, who is made to respond for all the damages, where one less culpable, although legally liable to third persons, may escape the payment of damages assessed against him by putting the ultimate loss upon the one principally responsible for the injury done. These cases have, perhaps, their principal illustration in that class wherein municipalities have been held responsible for injuries to persons lawfully using the streets in a city, because of defects in the streets or sidewalks caused by the negligence or active fault of a property owner. In such cases, where the municipality has been called to respond because of its legal duty to keep public highways open and free from nuisances, a recovery over has been permitted for indemnity against the property owner, the principal wrongdoer, whose negligence was the real cause of the injury.

"Of this class of cases is Washington Gas Light Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712, in which a resident of the city of Washington had been injured by an open gas box, placed and maintained on the sidewalk by the gas company, for its benefit. The District was sued for damages, and, after notice to the gas company to appear and defend, damages were awarded against the District, and it was held that there might be a recovery by the District against the gas company for the amount of damages which the former had been compelled to pay. Many of the cases were reviewed in the opinion of the court, and the general principle was recognized that, notwithstanding the negligence of one, for which he has been held to respond, he may recover against the principal delinquent where the offense did not involve moral turpitude, in which case there could be no recovery, but was merely *malum prohibitum,* and the law would inquire into the real delinquency of the parties, and place the ultimate liability upon him whose fault had been the primary cause of the injury."

In the Washington Gas Co. case, supra, the court explained the rule there enforced by quoting as follows: "In the leading case of Lowell v. Boston & Lowell Railroad, 23 Pick. [Mass.] 24, 32, [34 Am.Dec. 33], the doctrine was thus stated: 'Our law, however, does not in every case disallow an action, by one wrongdoer against another, to recover damages incurred in consequence of their joint offense. The rule is, *in pari delicto potior est conditio defendantis.*' If the parties are not equally criminal, the principal delinquent may be held responsi-

ble to his co-delinquent for damages incurred by their joint offense. In respect to offenses, in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But where the offense is merely *malum prohibitum,* and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers." [161 U.S. 316, 16 S.Ct. 564, 569.]

In the Astoria case, supra, the City of Astoria had granted the defendant company the right to construct, operate and maintain a line of railway over one of the city's streets. The railway was elevated some 18 inches above the street level. On one side of the line access to the track level was provided by the company through a gradual approach or apron. On the other side a perpendicular drop remained unguarded. A Miss Anderson fell at this point, and received injuries in consequence of which she sued the city. The city notified the company to defend the action, but it ignored the demand. After judgment went against the city it sued to recover over against the railroad company and had judgment for the amount of Miss Anderson's recovery and for the amount of the city's expenses in defending the action.

In affirming the judgment the Oregon Supreme Court noted the distinction pointed out in the Washington Gas Co. and Union Stockyards cases, supra, by referring to the same language quoted in the Washington Gas Co. case, supra, from Lowell v. Boston & Lowell R. R. Corp., supra, and said: "In order accurately to determine whether plaintiff and defendant are joint tortfeasors standing *in pari delicto* in the commission of the act which produced the mishap to Annie Anderson, recourse must be had to the complaint filed by Miss Anderson, in the action against plaintiff herein * * *

"From a *resume* of the salient features of the declaration, it plainly appears that the active negligence charged is against the railroad company, while passive negligence only is laid at the feet of the municipality. All that is urged against the city is its failure properly to care for the safety of the traveling public, by not providing barriers along the street where the accident occurred. While the city failed to perform its full duty in not requiring the company to construct and maintain aprons sufficient to protect the public from harm, and in not seeing that proper barriers were placed along the track where injury was possible, and, for that account, was liable to Annie Anderson, yet that situation does not render the parties equally delinquent. The efficient and primary cause of the accident was the negligence of the company, while the subsequent negligence of the city in not enforcing obedience to the terms of the ordinance was constructive rather than actual. If, however, the city and the railroad company had, as a joint undertaking, constructed the railroad track above the street grade and left the thoroughfare in the dangerous condition which produced the injury to Annie Anderson, there could be no recovery over against the company, because there would be concurring and mutual negligence on the part of the city and the railroad company. According to the ordinance granting to the company the use of the street in question, it was the duty of the company to lay its track rails even with the grade of the elevated street and to keep the street crossing in good condition and repair. A nonobservance of these provisions was the proximate cause of the accident, and by rule of law defendant is liable over to the plaintiff for the damages sustained by Miss Anderson."

The rules which these three cases, Washington Gas Co., Union Stockyards, and Astoria, exemplify have received approval in many cases,[4] the effect of which has been

---

4. The rule applied in the Astoria case and in the Washington Gas Co. case, supra, both dealing with claims by municipalities for indemnity, has been enforced in many instances in behalf of railroads. For example, see Middlesboro Home Telephone Co. v. Louisville & N. R. Co., 214 Ky. 822, 284 S.W. 104; Seaboard Air Line Ry. Co. v. American District Electric Protective Co., 106 Fla. 330, 143 So. 316;

910

summarized in the Restatement of the Law of Restitution. The ordinary rule denying indemnity or contribution to a joint tort-feasor, is stated in section 102 as follows:

"Where two persons acting independently or jointly, have negligently injured a third person or his property for which injury both became liable in tort to the third person, one of them who has made expenditures in the discharge of their liability is not entitled to contribution from the other."

The rule enforced in the Washington Gas Co. and the Astoria cases is stated in section 95 as follows:

"Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it is the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition."

When viewed against the background of these accepted and well-known common law rules, which we think the parties must have had in mind,[5] the separate portions of paragraph 7 of the contract appear to be directed to cover the two types of cases covered by these rules. We think that the first portion of the language here to be construed, (note 2, supra), was intended to cover a case of the kind dealt with in the Washington Gas Co. and the Astoria cases, and in section 95, supra. And we think that the portion following the semicolon (note 3, supra), was intended to provide for contribution in such cases as those represented by the Union Stockyards case, and section 102, supra.

An important factor in bringing us to this view is our belief that the parties would not have intended that Southern Pacific's rights to indemnity, which it might have claimed in the absence of such a paragraph, were to be trimmed down, or in any manner diminished. On the other hand, as the trial judge said in his opinion, speaking of Booth-Kelly, it was a fact "that its interests were served by the making of this contract." We think it was intended, and effectually stated in the contract, that in a case of the kind described in Restatement section 95, Southern Pacific should have the right to full indemnity, while in a case of the section 102 kind, Southern Pacific should have the right, created by the contract, to contribution to the extent of one-half the damages.[6]

When the contract is considered in this light, the findings of the district court become significant. The finding that "Defendant's negligence in this regard (placing and leaving the wood cart) was the active, direct, proximate and primary cause of the injury to plaintiff's employee Powers", characterizes the case as one within the class described in section 95.

The propriety of this finding is made clear by the record concerning the decision in the Powers suit. Respecting that action the court found: "Said employee brought action against Southern Pacific Company for damages for his injuries under the provision of the Federal Employers' Liability Act. The complaint alleged breach of Southern Pacific Company's statutory duty of using ordinary care to provide said Mack D. Powers with a reasonably safe place in which to work in that, first, it caused and permitted the wood cart to remain on the track, and second, it failed to warn him of the presence of the wood cart and the resultant insufficient clearance.

Central of Georgia Ry. Co. v. Macon Ry. & Light Co., 140 Ga. 309, 78 S.E. 931; Old Colony R. Co. v. Slavens, 148 Mass. 363, 19 N.E. 372, 12 Am.St.Rep. 558.

5. At the close of the evidence the court remarked: "I am of the opinion that they knew what they were doing in the first place, and that they had legal advice on the subject * * * you won't spend too

much time in arguing that they did not know what they were doing."

6. In the comment under section 102 it is stated: "An agreement between two persons to divide losses due to joint negligence, either before or after a negligent act, is not illegal and will be enforced (see Restatement of Contracts § 575)."

"At trial the allegation that Southern Pacific Company placed the wood cart on the track was removed from the jury's consideration because of lack of evidence. A verdict was returned for Mack D. Powers."

We have then a situation in which Booth-Kelly's negligence consisted, as the court found, "in placing and leaving the wood cart within 42 inches from the spur track", while, so far as the record in the Powers action disclosed, Southern Pacific's negligence consisted in a failure to warn him of the presence of the cart. Thus the situation was one precisely within the words of section 95, supra. Southern Pacific was held liable because of its "negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other", i.e. of Booth-Kelly. That this is the type of case which the compilers of section 95 had in mind is made clear by their comment on the section.[7] The court's finding that defendant's negligence was the "active, direct, proximate and primary" cause, negatives the existence of the acquiescence mentioned in the later portion of the comment.[7a]

■ We hold that the contract provides that in the circumstances here existing, and thus found by the court, Southern Pacific was entitled to the full indemnity it claims. It would have been entitled to no less, under the rule in the Astoria case, supra, even in the absence of a contract.

■ Booth-Kelly contends that no such meaning can be attached to the contract because of what was said in Southern Pacific Co. v. Layman, 173 Or. 275, 145 P.2d 295, 296. The contention has a double aspect. First, it is said that paragraph 7, in providing that the consequences of liability arising from joint or concurring negligence shall be borne equally, is an attempt to indemnify against the consequences of Southern Pacific's own negligence, and is against public policy and void. It is said that the Layman case, supra, so stated by way of dictum.

Next, it is said that the remainder of this paragraph cannot be construed as we have done, because the Layman case held that "a contract of indemnity against personal injuries, should not be construed to indemnify against the negligence of the indemnitee [himself] unless such an intention clearly appears." The Layman case, however, presented an entirely different situation. There Layman obtained from the railroad a right to maintain a private crossing upon agreeing to indemnify and save harmless the railroad against "all loss, cost or damage which [the] Licensee or any person or persons [might] suffer or sustain by reason of the entry of livestock * * * through said gates, and from any and all judgments which any person or persons [might] recover * * * by reason of any such loss." Years later a harvesting machine was struck by a train on this crossing. This, it was conceded, happened solely as a result of the railroad's negligent operation of its train. The railroad was compelled to pay damages for the loss of the machine, and then sought recovery from Layman. The language upon which Booth-Kelly relies was

7. "§ 95a. The rule stated in this Section applies to situations where a carrier is responsible for the condition of its right of way or a municipality is responsible for the condition of a public highway and a third person by negligence creates a condition dangerous to travelers thereon, or, having undertaken to make safe a dangerous condition, fails to do so. It applies also to cases where a municipality is made liable for harm caused by the unsafe condition of a road or sidewalk and where as between the two the primary responsibility is upon an adjacent landowner or upon a public utility which uses the road. The rule is also applicable to situations in which a person has a non-delegable duty with respect to the condition of his premises but has entrusted the performance of this duty to a third person, either a servant or an independent contractor. The rule also applies to cases where both parties are under an absolute liability for the condition of premises and where, as between the two, one of them has a prior duty of performance * * *."

7a. The final sentence of the comment reads: "If, however, the payor not only knew of the condition but acquiesced in its continuance, he becomes in effect, a joint participant with the other in the tortious conduct and hence is barred from indemnity."

used in the discussion of these facts. That it was used in respect to a case involving indemnitee's *sole* negligence is made clear by the later case of Glen Falls Indemnity Co. of N. Y. v. Reimers, 176 Or. 47, 155 P.2d 923, 925, where the force of the rule of the Layman case was stated as follows: "Speaking through Mr. Justice Brand, this court has said: 'If an indemnitee negligently causes injury to a third party and thereby suffers liability and loss by reason of its own sole negligence, it is properly held that he cannot have indemnity in an action on a bond against the indemnitor, unless it is clearly made manifest in the bond that it was intended to cover the indemnitee against his own negligent acts.' United States Fidelity and Guaranty Co. v. Thomlinson-Arkwright Co., 172 Or. 307, 324, 141 P.2d 817." [8]

The rule of the Layman case has no application here, for Southern Pacific seeks indemnity not for its own negligence, but rather for that of Booth-Kelly.

 It is next argued that it was not permitted to the court to find that Booth-Kelly's negligence was "the active, direct, proximate and primary cause of the injury",[9] for the reason that the judgment in the Powers case, which, because of the notice and opportunity to defend, was admittedly binding on both of the instant parties, had determined that the negligence of the Southern Pacific constituted the immediate proximate cause of the accident, and had determined that Booth-Kelly's negligence, if any, was a mere remote cause, and that such is now res judicata.

The trial court rejected this contention and in this we think it was right. As the Oregon court said in the Astoria case, supra, "The scope of the estoppel created by the judgment in the primary case embraces all of the issues determined by it." But that determination here was simply that Powers received injuries to the extent of his judgment, and that a contributing proximate cause of these injuries was the negligent failure of Southern Pacific to furnish him a safe place to work by failing to warn him of the presence of the wood cart. But which act of negligence was primary, or which active or direct, was not an issue in the Powers case.[10]

Booth-Kelly says there was no consideration for the indemnity provision. This, it

---

8. The Thomlinson-Arkwright case, here cited, although differing on its facts, is noteworthy for its reference to the Restatement of the Law of Restitution in construing a contract, and for its clear definition of the differing common law rules here involved. Thus the court said, 172 Or. at pages 325–326, 141 P.2d at page 824: "A second situation arises when a third party is injured by the concurrent negligence of two defendants. When the negligence of both is equal in degree, there is no right of contribution between the defendants, and a fortiori there would be no right of indemnity one against the other. In such a case also it may be that one tortfeasor could not recover against the other upon a bond of indemnity unless the intent to cover that situation was clearly made manifest * * *

"Where, however, two have been held liable to a third person for negligence, but as between themselves one of them is entitled to indemnity from the other, an entirely different situation arises. The case at bar is of that kind. Here the Warren Company seeks indemnity for the negligence, not of itself, but of the subcontractor."

9. The court also made findings numbered 17 and 18 as follows: "Employees of plaintiff observed the position of the car and operations continued thereafter prior to the accident." "The loss and damage to Powers were not proximately caused by the conditions mentioned in the previous findings." (The context shows that the last two words quoted were intended to be "preceding finding".)

10. Booth-Kelly's brief asserts that the judgment was res judicata "that the Southern Pacific was there held for its own Sole negligence as employer under the Federal Employers' Liability Act." The argument is that Southern Pacific was held liable as employer, and since Booth-Kelly was not an employer of Powers, the decision must have been based upon a determination of "sole" negligence. It is not suggested that Powers could not have recovered damages from Booth-Kelly had he chosen to sue it. No authority is cited for this novel theory, and we regard it as unsupported by reason.

says, is true for two reasons. First, it is said, Southern Pacific was obliged by law to furnish the spur track service, and since it only agreed to do what it was otherwise obliged to do, there was no consideration. The second reason advanced is that this 1941 agreement was a mere modification and continuation of a 1909 agreement which did not contain the indemnity clause, but was otherwise the same. Therefore, it is said, the addition of the indemnity clause in 1941 was without consideration since Southern Pacific then undertook no more than it was bound to do under the earlier contract.

We think the district court correctly found that consideration existed. Examination of the various laws cited as requiring the railroad to perform all that it undertook here, does not bear out Booth-Kelly's argument. 8 O.C.L.A. § 113-104 requires maintenance of public, not private switches. Schanen-Blair Co. v. Southern Pacific Co., 68 Or. 106, 136 P. 886; Southern Pacific Co. v. Railroad Commission, 60 Or. 400, 119 P. 727. Section 113-109, also cited, requires the laying of no more than 150 feet of switch track in certain cases. Here the track involved was 2257 feet in length. Section 113-108 requires railroads in certain cases to construct a *switch connection* with private side tracks. The requirement is subject to certain conditions, such as the requirement that there be sufficient business to justify the outlay. The connection is to be made on "reasonable terms", and may be ordered only after hearing and findings by the railroad commission. The Interstate Commerce Act, 49 U.S.C.A. § 1 (9), requires *switch connection* with private tracks, but this imposes no duty upon the railroad "beyond its own right of way". Luton Mining Co. v. Louisville & N. R. Co., 276 Ky. 321, 123 S.W.2d 1055, 1060.

Nor do we find basis in the contract for Booth-Kelly's argument that the 1941 contract gave it nothing new, and added nothing to Southern Pacific's obligations under the old contract. The 1941 contract gave Booth-Kelly the new right to move cars in certain cases. It also contained express waivers of certain earlier breaches by Booth-Kelly of some of the clearance provisions under the old agreement.

Another contention of Booth-Kelly is that there should be read into the portion of paragraph 7 which we have quoted herein the qualification that the indemnity could be claimed only for accidents occurring while Southern Pacific was serving Booth-Kelly. The train on which Powers was injured was actually delivering logs to another shipper.

This argument is based upon the fact that in another portion of paragraph 7, providing for responsibility for risk of fire, the indemnity there called for related to damage "arising from fire caused by locomotives operated by Railroad on said Track * * * for the purpose of serving said Industry". It is argued that this reference to "serving said Industry" should be carried into the other portion of paragraph 7. We do not think so. The very fact this limitation is mentioned in the special case of fire, but omitted in the general paragraph, suggests an intentional variation. Certainly the reasons for securing adequate clearances for the protection of employees were of equal importance for movements to others as for movements to Booth-Kelly. It does not seem reasonable that the parties would intend that such a limitation should be inserted. The portion of the contract which we have had occasion here to construe is clear, and we think, unambiguous. We think the construction thus urged by Booth-Kelly is not warranted.

Other contentions of Booth-Kelly, such as that there was a modifying custom or practice between the parties, that Southern Pacific had waived Booth-Kelly's default, and that Southern Pacific was guilty of other acts of negligence, were determined adversely by the district court, and its findings in that regard are sustained by ample evidence.

Since our view of the contract requires a holding that Southern Pacific is entitled to recover the full amount of its loss, or $46,-568.99, as stated in part "B" of the pretrial

order, and as demanded in the second paragraph of the prayer of its complaint, the cause is remanded with directions to modify the judgment accordingly. Southern Pacific shall recover its costs in this court.