## FOSTER v. PENNSYLVANIA R. CO.
### (Crown Can Co., third-party defendant).
### Civ. A. No. 9673.

United States District Court
E. D. Pennsylvania.
March 31, 1952.

Francis H. Monek, of Chicago, Ill., Harry A. Demar, of Philadelphia, Pa., for plaintiff.

Philip Price, of Philadelphia, Pa., for defendant Pennsylvania R. Co.

J. J. McDevitt, 3rd, of Philadelphia, Pa., for Crown Can Co.

BARD, District Judge.

In the trial of this case the jury returned a special verdict finding that defendant Pennsylvania Railroad Company was negligent, that plaintiff was not negligent, that third-party defendant Crown Can Company was negligent, and that plaintiff was damaged in the amount of $80,750. Thereafter, I entered judgment of $80,750 in favor of plaintiff against Railroad, and of

$40,375 in favor of Railroad against Crown Can. This case is now before me on Railroad's motions for judgment against Crown Can in the amount of $80,750, and for a new trial, and on Crown Can's motions for judgment n. o. v. and for a new trial.

Plaintiff was injured on a railroad siding located on the premises of Crown Can. Plaintiff slipped on a tin can as he mounted a moving train in the performance of his duties, and was injured by being caught in the close clearance between the box car he was mounting and a pillar or girder erected by Crown Can with the knowledge and acquiescence of Railroad. Railroad's negligence consisted of failing to provide plaintiff with a safe place to work. As submitted to the jury, Crown Can's negligence consisted of maintaining their premises in a condition of which Railroad had no notice.

The real problem on Railroad's and Crown Can's cross motions for judgment is the legal effect of the indemnity clause of a siding agreement between Railroad and Crown Can.

This indemnity clause provides:

"Liability.

"8. It is understood that the movement of railway locomotives involves some risk of fire, and the Industry assumes all responsibility for and agrees to indemnify the Railroad Company against loss or damage to property of the Industry or to property upon its premises, regardless of Railroad Company negligence, arising from fire caused by locomotives operated by the Railroad Company on said side track, or in its vicinity, for the purpose of serving said Industry, except to the premises of the Railroad Company and to rolling stock belonging to the Railroad Company or to others, and to shipments in the course of transportation.

"*The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said track*; and if any claim or liability, other than from fire, caused by locomotives as aforesaid shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally". (Emphasis added.)

■ Since this contract was made and is to be performed in Pennsylvania, the law of Pennsylvania applies.[1] In Schroeder v. Gulf Refining Co., (No. 2), 300 Pa. 405, on page 411, 150 A. 665, on page 667, the Pennsylvania Supreme Court said:

" 'A party may contract for indemnity against the results flowing from his own acts; but "no inference from words of general import can establish it"; on the contrary, "the intent of both parties to that effect [must] be made apparent by clear, precise and unequivocal language." ' Camden Safe Deposit & Trust Co. v. Eavenson, 295 Pa. 357, 145 A. 434, 436. 'In all cases, such contracts should be construed strictly, with every intendment against the parties seeking [their] protection.' Crew v. Bradstreet Co., 134 Pa. 161, 19 A. 500, 7 L.R.A. 661; Pennsylvania R. R. Co. v. Roydhouse, 267 Pa. 368, 110 A. 277. Though an agreement of indemnity for loss or damage is enforceable (Rundell & Co. v. Lehigh Valley R. R. Co., 254 Pa. 529, 98 A. 1054; Atherton v. Clearview Coal Co., 267 Pa. 425, 110 A. 298), the purpose to so relieve from liability must clearly appear, and the words used must be construed in connection with the circumstances attending the parties and their object in making the instrument. Perry v. Payne, 217 Pa. 252, 66 A. 553, 11 L.R.A.,N.S., 1173."

1. In this case Railroad and Crown Can have expressed their intentions in writing, and it is this written contract, quoted above, that determines each party's rights and obligations. Therefore, the common law principles of restitution and implied contracts of indemnity are inapplicable.

Railroad relies upon the emphasized part of the indemnity clause to transfer its liability over to Crown Can. Is such an intention expressed by "clear, precise and unequivocal language" or are words of general import used so that every intendment must be construed against Railroad? Without commenting upon the wisdom of this phase of Pennsylvania law but applying it as I must, I believe it to be the latter.

In the first paragraph of the indemnity clause pertaining to fire caused by locomotives, Crown Can clearly, precisely and unequivocally agreed to indemnify Railroad *"regardless of Railroad Company negligence"*. Those or similar words were not used in the second paragraph upon which Railroad relies. Instead, words of general import were used, and absolutely nothing was said concerning liability "regardless of Railroad Company negligence". By inserting those words in the first paragraph, Railroad and Crown Can show that they knew the import of and necessity for those words; by omitting them from the second paragraph, the parties obviously intended a different construction—that Crown Can would not indemnify Railroad for Railroad's negligence.

Railroad urges me to adopt the reasoning of Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 183 F.2d 902, 20 A.L.R. 2d 695, wherein the identical agreement was interpreted and an opposite conclusion reached. In that case that Court applied the statutory and common law of Oregon; this is Pennsylvania.

■ Accordingly, Railroad is not entitled to complete indemnity from Crown Can, when we have a jury finding that the railroad was negligent.

On the motions for new trial, Railroad has pointed out that a question asked by plaintiff's counsel of plaintiff's actuary contained an erroneous calculation of plaintiff's annual net loss of earnings, i. e., $3,900 instead of approximately $3,200, and that Railroad objected "to any figures * * * based on this * * * premise".

The highest figure plaintiff's actuary testified to as possible loss of future earnings was $91,884—which represented $3,900

paid annually for thirty-six years reduced to the present value at a rate of 2½%. Railroad contends this figure should be $75,712.42 based on an annual payment of $3,213.60. The figure given by the actuary was not controlling but was merely to aid the jury to determine plaintiff's possible future loss of earnings as one item in calculating total damages. It did not include past loss of earnings, past and future medical expenses, nor past and future pain and suffering. The jury obviously did not accept the actuary's figure since the jury's finding for all items of damage was $80,750, a lesser amount. The jury could well have found the sum of $75,712.42 as representing future loss of earnings, and in view of their findings of total damages of $80,750 this would leave approximately $5,000 for past loss of earnings, past and future medical expenses, and past and future pain and suffering.

The jury had all the correct facts of this case before them, and also had sufficient information to compute properly the present value of plaintiff's future loss of earnings.

One other reason alleged in support of the motions for new trial merits discussion. Defendant and third-party defendant each contend that the verdict is excessive.

■ Plaintiff was seriously injured, and in accordance with the evidence and the jury's special findings, he is entitled to relatively large damages. However, I believe under all the evidence he will be adequately compensated with a verdict of $70,000 and any amount above that is excessive.

By so reducing the judgment heretofore entered on the jury's special verdict, any incorrectness of the actuary's testimony becomes immaterial, and any merit to the above argument for a new trial loses its validity.

If plaintiff accedes to this remittitur, then of course third-party plaintiff's judgment against third-party defendant will have to be reduced proportionately.

Accordingly, the motion of third-party plaintiff for judgment in accordance with its motion for a directed verdict is denied.

The motion of third-party defendant for judgment non obstante veredicto under Fed. Rules Civ.Proc. Rule 50(b), 28 U.S.C. is denied.

If plaintiff remits all of his judgment in excess of $70,000, the motions of defendant and third-party plaintiff and of third-party defendant for a new trial are denied; otherwise, these motions will be granted.

Orders may be submitted.