**FOSTER v. PENNSYLVANIA R. CO.**
**(CROWN CAN CO., third party defend-**
**ant), (two cases).**

**Nos. 10774 and 10777.**

United States Court of Appeals
Third Circuit.

Argued Nov. 21, 1952.

Decided Feb. 5, 1953.

---

Philip Price, Philadelphia, Pa. (Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., on the brief), for Pennsylvania R. Co.

John J. McDevitt, 3d, Philadelphia, Pa. (Peter P. Liebert, III, Philadelphia, Pa., on the brief), for Crown Can Co.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Frank G. Foster sued the Pennsylvania Railroad Company under the Federal Employers' Liability Act[1] for damages for injuries sustained while engaged in his duties as head brakeman during shifting operations on the property of the Crown Can Company in Philadelphia. The railroad brought in Crown Can as a third-party defendant. By special verdict, the jury found that the railroad and Crown Can were negligent and that Foster was not.

---

1. 35 Stat. 65 (1908), as amended, 53 Stat. 1404 (1939), 45 U.S.C.A. § 51 et seq. (1943).

Following the disposition of various post-trial motions, judgment in the amount of $70,000 was entered in favor of Foster against the railroad, and in favor of the railroad against Crown Can for one-half of Foster's judgment.[2] These appeals followed, the railroad being the appellant in No. 10,774 and Crown Can appealing in No. 10,777.[3] Each appellant would have us shift the entire liability to the other. We think that each should bear one-half.

On the night of August 27, 1947, the crew in which Foster was working was engaged in shifting loaded boxcars from F track in the Crown Can yard to the Pennsylvania Railroad yard. Between F and E tracks, there was the usual six-foot separation, and in that areaway there were steel girders which supported overhead conveyors. As head brakeman, Foster was required to ride out of the Crown Can yard on the draft of cars. While attempting to mount the side of a moving boxcar, he stepped on a tin can and slipped and was thus unable to pull himself in close to the side of the car before coming in contact with one of the girders which knocked him off the car, causing his injuries.

We shall treat first Crown Can's assertion that no view of the evidence can be squared with the trial court's instructions, and result in its being liable. The conflicting testimony raised factual issues of possible negligence on the part of the railroad as to inadequate lighting, close clearances caused by the presence of the girders in the "six-foot," unevenness of the track which would produce a swaying motion of the moving cars and would further reduce the already close clearance, and the presence of tin cans and other debris in the "six-foot." The court charged that Crown Can could not be held for any of the permanent conditions, that is, the inadequate lighting, close clearance, or the uneven track, because the railroad had full knowledge of these conditions and could have refused to serve Crown Can until they were corrected. The jury was told that Crown Can could be held liable only for the presence of cans in the "six-foot," and, even then, only if it had done something out of the ordinary and had allowed an accumulation of cans different from what was usually there and of which the railroad had no knowledge. Crown Can contends that there was no evidence that the presence of cans in the area of the accident was any different then from what it always was. It says that the jury could have believed Foster's evidence and found that the area was always littered with debris, or it could have believed Crown Can's evidence and found that the area was policed religiously and that it was always reasonably clean, but in no event would it be justified in finding (as it must have) that there was more debris there on the night of the accident than there usually was. It is said that the jury rejected all the evidence on this point and substituted a compromise theory of its own. If true, that would vitiate the special finding against Crown Can. Foster's story was that the area was always littered with cans and other debris. Crown Can's story was that the only debris there consisted of cans which fell to the ground during loading operations and that these were regularly picked up during and after the shifts. These are extreme views. We think, however, that the jury would have been justified in rejecting Foster's possibly exaggerated version and concluding that, while Crown Can usually did an effective policing job, it had failed to pick up all the cans on the night of the accident. This would be the "difference," required by the court's instructions. If, as Crown Can's own witnesses stated, the usual practice was to pick up all fallen cans, the area would ordinarily be clean. On the other hand, that Foster slipped on a can was uncontradicted. Also, there was no testimony that there were no cans at the scene when the accident occurred. Crown Can employees testified that cans did fall on the ground during

2. The case is reported in D.C.E.D.Pa.1952, 104 F.Supp. 491.

3. After a remittitur of $10,750, Foster's judgment was satisfied by the railroad before argument on these appeals, and without prejudice to its possible rights against Crown Can. Thus, the only issues here are the rights and liabilities of the railroad and Crown Can *inter se*.

loading. Furthermore, one Wilson, Crown Can's night foreman, testified that at the time the accident happened, it was the peak of the can-shipping season. The jury, thus, could have reasoned that a clean area was the usual situation, of which the railroad was cognizant, but that on the night of the accident Crown Can had allowed cans to remain on the ground and that this relatively transitory situation was not known by the railroad. We think, therefore, that the special finding against Crown Can was amply justified.

Crown Can argues also that Pennsylvania law requires that it be absolved since in that state an owner of premises is not liable to an employee of another who is injured thereon by a dangerous condition which is known to the employee or his employer. Engle v. Reider, 1951, 366 Pa. 411, 77 A.2d 621; Valles v. Peoples-Pittsburgh Trust Co., 1940, 339 Pa. 33, 13 A.2d 19. This need not detain us long since the jury's finding against Crown Can establishes that the debris condition on the night of the accident was unusual and could not have been known by the railroad.

Finally, Crown Can attacks the finding against it on the ground that Pennsylvania requires that the plaintiff prove, as a part of his case, that the owner of the premises failed to warn the injured man's employer of the dangerous condition. Engle v. Reider, supra; Valles v. Peoples-Pittsburgh Trust Co., supra. Assuming that to be the Pennsylvania rule in a case of this kind, we think it has no application to the facts here, since Crown Can's own witnesses denied the existence of any dangerous condition. Obviously, it would not notify the railroad of a condition which it stoutly maintains was nonexistent.

Having concluded that Crown Can could properly be held for some part of Foster's recovery, we turn to the railroad's contention that Crown Can is solely liable.

At the time of the accident, there was in effect between the railroad and Crown Can a siding agreement containing the following paragraph:

"8. It is understood that the movement of railway locomotives involves some risk of fire, and the Industry assumes all responsibility for and agrees to indemnify the Railroad Company against loss or damage to property of the Industry or to property upon its premises, regardless of Railroad Company negligence, arising from fire caused by locomotives operated by the Railroad Company on said side track, or in its vicinity, for the purpose of serving said Industry, except to the premises of the Railroad Company and to rolling stock belonging to the Railroad Company or to others, and to shipments in the course of transportation.

"*The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry, its employees or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said track;* and if any claim or liability, other than from fire, caused by locomotives as aforesaid shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally." [4] (Emphasis supplied.)

4. It is apparent that paragraph 8 of the siding agreement treats of three different situations. The first deals with fire caused by locomotives and attempts to relieve the railroad from loss caused by its own negligence. The second deals with a primary-secondary, active-passive kind of negligence and provides for indemnity for the railroad from loss caused by the primary negligence of Crown Can, for which the railroad was also liable but only secondarily so, because of some legal relation to the injured party, as here, that of employer-employee. The third covers the situation of concurring, primary negligence and provides for contribution.

The cases construing similar spur-track agreements are collected in Booth-Kelly Lumber Co. v. Southern P. Co., 9 cir., 1951, 183 F.2d 902, 20 A.L.R.2d 711.

The railroad tells us that the facts bring the case within the italicized portion of the agreement, thus making Crown Can wholly responsible, by way of indemnity. Also, it contends that a like result is required by Pennsylvania law, even without the siding agreement. Crown Can contends that in no event is it liable for more than one-half of Foster's recovery, and that, by way of contribution, since the last clause of paragraph 8 of the agreement is controlling because the railroad, too, was guilty of active negligence. The arguments of both appellants are based upon the jury's inarticulate conclusions which, they say, it must have reached, in view of the court's charge, in order to arrive at the express findings of negligence.

As we have said, the jury must have found that the debris condition was different on the night of the accident from what it ordinarily was and that the railroad was ignorant of that unusual condition. This means that, as between the railroad and Crown Can, the former could not be liable because of the presence of the can. . With that as a premise, the railroad argues that, as between it and Crown Can, it could not be liable at all since the following testimony of Foster, on cross-examination, shows, *as a matter of law*, that the presence of the can was the only cause of the accident:

> "Q. And if you hadn't slipped on the can, was there anything to prevent you from getting on the car and riding out safely? A. No, sir."

The railroad asserts that this shows that the lighting conditions, close clearance, and uneven track were not causal factors but only conditions. Therefore, since the sole cause of the accident was the presence of the can and since, as between appellants, the railroad could not be liable for that cause, it argues that there was nothing left upon which to predicate a finding of negligence on its part except a

breach of its nondelegable duty to provide a reasonably safe place to work. It admits that the presence of the can is sufficient to establish its negligence in that respect. But, we are told, this is only secondary negligence, that is, passive negligence in failing to remove the can which had fallen and was allowed to remain there because of the active, primary negligence of Crown Can. Consequently, the argument concludes, the indemnity clause of the siding agreement comes into play, and Crown Can must pay the whole bill.

That argument places undue reliance on the effect of Foster's statement that, but for the can, he could have mounted and ridden safely past the girder. At most, the statement was his opinion as to what might have happened. We do not .say that it should not be considered by the jury simply because it is labelled by the vituperative epithet, "opinion." [5] It is not, however, conclusive as to causation; the jury could believe it or not. And, as we view the case, the jury did not. There is ample evidence from which the jury could have concluded that the railroad was negligent because of the inadequate lighting. Mounting the side of a moving car is an instantaneous, integrated action in which there is no opportunity to look at the side of the car for grabirons, look ahead for close clearances, and look down for possible pitfalls, all at the same time. By saying that the jury could have found that the railroad was negligent because of inadequate lighting we do not mean that, once having committed himself to mounting from a spot littered with cans, Foster could have avoided stepping on a can had the lighting been adequate. The jury very well could have reasoned that, had the lighting been sufficient, he would have picked a spot free of cans from which to board the car, so that his steps would not have brought him down on the can. The case is one of concurring negligence which both parties agree is covered by the last clause of

5. See 7 Wigmore, Evidence §§ 1951 and 1976 (3d ed. 1940), where the general rule is stated as excluding such testimony, followed by a scathing attack against that rule. In the present case, no objection was made to the admission of Foster's opinion.

paragraph 8 of the siding agreement, which calls for contribution, not indemnity.[6]

■ The railroad relies heavily on Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 20 A.L.R. 2d 695, in which a substantially identical clause of a siding agreement was construed so as to require indemnity to the railroad. That case is inapposite, however, because there the lumber company was primarily negligent, the railroad only secondarily so.

The judgment of the District Court will be affirmed.

McLAUGHLIN, Circuit Judge (dissenting).

This accident was caused solely by plaintiff slipping on a tin can. That caused him to lose his balance and prevented him from finishing his ascent of the car ladder to the safety of the side of the car. Plaintiff himself eliminated any question of close clearance, unevenness of the track, or inadequate lighting. He testified that if he had not slipped on the can there was nothing to prevent him from climbing on the car and riding out safely. He said that he knew that cans were in the area where he was injured and that he saw them; that " * * * there was a certain amount of glare to them." The appendix excerpts from his testimony comprise forty-eight pages. Under all of the direct and redirect examination and cross and recross-examination by the two defendants, the net result of plaintiff's story is as above outlined.

From the court's charge the only negligence which could be attributed to the can company was the condition of the premises. If, however, the condition of the premises was found to be negligence, but the jury believed testimony to the effect that the railroad had been notified of that situation then, instructed the court, "the railroad cannot hold the can company for any negligence * * *." Since both the can company and the railroad were found negligent it follows that the jury decided that the can company was at fault with respect to the condition of the accident area and that the railroad was to blame because of the track lay out, uneven roadbed or inadequate lighting. The verdict, under the circumstances, of necessity absolves the railroad from any blame arising from the presence of cans and pieces of tin on the ground.

Foster, in testifying that the sole cause of his hurts was his stepping on and slipping on the can, was not giving his opinion of what happened. He was detailing the simple fact. The jury was not bound to believe him but if it had not, and its verdict indicates that it did, there was no other proof in the record of the proximate negligence of either defendant. Foster's testimony was the only evidence of what had caused him to fall. Assuming it could be inferred that generally the lighting was inadequate, the roadbed uneven or the clearance too close, there is no evidence that one or all of those conditions had the slightest direct relation to Foster's fall.

This appeal should be decided on the facts established at the trial below, not on a conjecture concerning possibilities which were never tied into the accident at all. The complete immediate reason for Foster's injury was the slipping on the can. The jury concluded that the presence of the can amounted to proximate negligence by the can company. The latter concedes, as of course it must, that if it " * * * was solely and exclusively negligent", it alone is liable for plaintiff's damages. The rec-

---

**6.** We agree with the District Court in its conclusion that, having entered into a contract on the matter, the rights of the parties are to be determined thereby, rather than by common law rules of indemnity and contribution. D.C.E.D.Pa. 1952, 104 F.Supp. 491, 492 note 1. See also Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F.2d 902, 906–907. Even without the siding agreement, the railroad could have had contribution under the Act of 1939. Act of June 24, 1939, P.L. 1075, § 1, 12 Purdon's Pa.Stat.Ann. § 2081 (1951). See also the Pennsylvania annotations to the Restatement of the Law of Restitution, § 102 (1940). The Act of 1939 was replaced by the Uniform Contribution Among Tortfeasors Act, Act of July 19, 1951, P.L. 1130, § 1 et seq., 12 Purdon's Pa.Stat.Ann. § 2082 et seq.

ord shows that particular kind of liability inescapable.

I would reverse that part of the district court judgment which allowed judgment in favor of the railroad and against the can company for one-half of the modified verdict and I would direct that judgment be entered in favor of the railroad and against the can company for the full amount of plaintiff's modified verdict against the railroad.