Harvey MILLER, Plaintiff,

v.

The PENNSYLVANIA RAILROAD COM-
PANY, Defendant and Third-Party
Plaintiff-Appellant (Allen N. Spooner &
Son, Inc., Third-Party Defendant-Appel-
lee).

No. 353, Docket 23731.

United States Court of Appeals
Second Circuit.

Argued May 16, 1956.

Decided Aug. 13, 1956.

Irving H. Schafer, New York City
(William L. Shumate, New York City, of
counsel on the brief), for defendant and
third-party plaintiff-appellant.

Galli & Locker, New York City (Pat-
rick J. McCann and Patrick E. Gibbons,
New York City, of counsel on the brief),
for third-party defendant-appellee.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

The question raised by this appeal is whether the Pennsylvania Railroad, a Pennsylvania corporation, is entitled to indemnity from Allen N. Spooner, Inc., a New York corporation, for damages paid to an employee of Spooner who was injured while working on property owned by Pennsylvania.

The Pennsylvania Railroad owns and maintains a building located on the east side of First Avenue between 33rd and 34th Streets in Manhattan, which building is known as Shaft House No. 4. This shaft house contains high tension electrical equipment and fans which are used to ventilate railroad tunnels running between Long Island City and Pennsylvania Station in Manhattan.

Allen N. Spooner & Son, Inc. contracted with Pennsylvania to remove a concrete fan cowl or vent from Shaft House No. 4 and to replace it with a cowl of steel. Pursuant to this agreement Spooner removed the concrete cowl and on October 7, 1950 the new steel cowl was delivered at the shaft house. Because the work on that day involved moving the steel cowl in close proximity to high tension cables outside the building, the electrical equipment was de-energized while the work was in progress.

Spooner found it necessary to cut the cowl into two pieces in order to install it. The pieces were put in place on October 7, but it was still necessary to weld the two pieces together and to weld the cowl to the vent which passed through the north wall of the building and fitted over an airshaft which led to the tunnels below. None of the remaining work was done until Saturday, October 14. There was testimony that the work was done only on weekends because representatives of Pennsylvania and Spooner had agreed that traffic through the tunnels was lighter at that time. On October 14 a group of Spooner's employees including Miller and Sharkey, two welders, continued their work but were unable to finish. They returned on Sunday, October 15 to finish the job. During the afternoon of that day Miller and Sharkey took turns at working on the remaining welding.

On the north wall of the shaft house, about four feet above the cowl on which Sharkey and Miller were working, was a rack of high tension equipment. Although this equipment had been de-energized on October 7, it was not de-energized on October 14 or 15. The pot heads and petticoat insulators of this high tension equipment were located above a narrow platform and behind a railing on which hung a sign reading "Danger Live Wire Keep Off." Miller testified that he had been warned by his foreman to stay off the platform and to keep away from the high tension equipment. He testified that he heeded these instructions, did not go on the platform, and was careful not to touch the equipment.

In welding the top of the cowl, however, it was necessary for the welders to work very close to the high tension equipment. This equipment was about three feet from the north wall of the shaft house and four feet above the top of the cowl. The welders had to work on top of the cowl in the three foot space between the electrical equipment and the north wall.

Shortly after 9 P.M. on October 15, while Sharkey was welding and Miller was standing near him, there was a bright flash and an explosion which filled the shaft house with dust and smoke. Miller was thrown down, his clothes were smoking, part of his clothing had been torn from his body, and he suffered serious injury.

Miller brought action against Pennsylvania alleging that his injuries were the result of its negligence in maintaining an unsafe condition in its shaft house. Pennsylvania filed a third-party complaint against Spooner seeking indemnity for any damages which might be recovered from it by Miller. Jurisdiction was based on diversity of citizenship.

After Miller put in his affirmative case Pennsylvania settled with him for $70,-

882.88. Counsel for Spooner stipulated that Pennsylvania's settlement was not improper or improvident, and it was agreed that the third-party action be tried before Judge Rayfiel without a jury and that the evidence adduced thus far in the trial be deemed a part of the record in the third-party action. Judge Rayfiel, after hearing further evidence, gave judgment for the defendant. He found that Pennsylvania was negligent in allowing dust, dirt, and metal particles to accumulate on the insulators and electrical equipment, that this accumulation caused a "flashover" or short circuit resulting in an "arc or long flame," and that it was this "flashover" which caused Miller's injuries. He found further that Pennsylvania either knew or had reason to believe that Spooner's men would be working in the shaft house on October 15.

Judge Rayfiel also found that Spooner was free from negligence since it had warned Miller and its other employees of the danger incident to working near the high tension equipment and its employees exercised care and prudence while engaged in that work. He found that Miller at no time touched any of the electrical equipment.

Since he concluded that Pennsylvania's negligence was the sole cause of the accident, Judge Rayfiel refused to award indemnity against Spooner. He also held, however, that even if Spooner had been solely negligent, indemnity would be barred by certain provisions of the repair contract which imposed upon Pennsylvania the duty of providing liability insurance. This latter point we need not consider since we are of the opinion that Judge Rayfiel's findings of fact dispose of the case.

■ Judge Rayfiel's finding that Pennsylvania was negligent in allowing dirt to accumulate on the electrical equipment and that this negligence was a proximate cause of the accident was not clearly erroneous. There was testimony by Pennsylvania's assistant supervisor of telegraph and signals that the insulators had not been cleaned since 1944, that dust was carried into the shaft house by backdrafts from the tunnel, and that excessive dust and dirt may cause a flashover. Fred A. Wahlers, an electrical engineer, testified as an expert for Miller that the cause of the accident was a flashover resulting from dirty insulators. Battalion Chief Love of the New York Fire Department testified that the insulators were covered with dust and that there was evidence of a "flashover." Pennsylvania countered with an expert who testified that the dust on the insulators did not contribute to the accident. It was for the trial judge to assess the value of the testimony of these experts. Certainly there was adequate support for his conclusion that the insulators were dusty and dirty and that Miller's injury resulted from a flashover which was caused by the dust and dirt.

■ Since we accept the trial judge's conclusion that Pennsylvania's negligence in maintaining its electrical equipment was a proximate cause of the injury, we need not examine his further conclusions that Spooner was free from negligence in permitting Miller to work so close to the high tension equipment without having it de-energized and that Pennsylvania knew or had reason to know that Spooner's employees would be working on October 15. Even if Spooner was negligent Pennsylvania's negligence in maintaining the equipment would bar it from recovering indemnity.

■ Since this is a diversity case New York law is controlling. The New York cases make it quite clear that a party guilty of active negligence has no right of indemnity against another whose concurrent negligence contributed to the injury. E. g. McFall v. Compagnie Maritime Belge, 1952, 304 N.Y. 314, 328-329, 107 N.E.2d 463. The right of indemnity is ordinarily restricted to those cases where the indemnitee, because of his special relationship to the person injured, has a duty to protect him from the danger created by the indemnitor, which causes the injury. Anderson v. Liberty Fast Freight Co., Third Dept. 1954, 285 App.

Div. 44, 135 N.Y.S.2d 559. In such a situation it may be said that the negligence of the indemnitee is passive as the primary duty to prevent or correct the dangerous situation rests with the indemnitor. But in the instant case the primary responsibility for inspecting, maintaining, and cleaning the electrical equipment was on Pennsylvania. To the extent that the accident resulted from a failure of the electrical equipment it was the consequence of Pennsylvania's own active negligence. Closely in point is Edwards v. Sophkirsh Holding Corp., First Dept., 280 App.Div. 168, 112 N.Y.S.2d 219, affirmed 1952, 304 N.Y. 850, 109 N.E.2d 717. There a property owner sought indemnity from the employer of a person injured on his premises while delivering and storing coal in the vicinity of a defective light and cord maintained by the property owner. Recovery over was denied on the ground that negligence in maintaining the light and cord was active negligence such as would bar indemnity.

■ Nor is Pennsylvania helped by its contract with Spooner. The contract did not specifically provide for indemnity. In paragraph XVIII(a), however, Spooner agreed:

"To take, use, provide and make all proper necessary and sufficient precautions against accidents, injuries or damages to any person or property during the progress of the construction of the work herein contracted for."

■ Even if this can be construed as a contract to indemnify Pennsylvania for injuries resulting from Spooner's negligence in carrying on its work, it provides no basis for charging to Spooner injuries produced by Pennsylvania's own active negligence. Under New York law a person is not entitled to be indemnified against a liability to which his own active negligence contributed unless the contract expresses that intention beyond all doubt. Semanchuck v. Fifth Avenue and 37th Street Corporation, 1943, 290 N.Y. 412, 49 N.E.2d 507; Mostyn v. Delaware L.

& W. R. R., 2 Cir., 1947, 160 F.2d 15, certiorari denied 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355. The contract in the instant case contains no suggestion of such an intention. Even though Spooner may have had a duty to take precautions to protect its employees from injury, the contract provides no basis for imposing upon it the primary responsibility for correcting or protecting against a defective condition in equipment maintained by Pennsylvania.

Since Judge Rayfiel's finding that Pennsylvania was negligent is not clearly erroneous, and since Pennsylvania's active negligence bars its recovery of indemnity, the judgment for the defendant must be affirmed.