Joaquina **QUINONES, Administratrix of the Estate of Sixto Quinones, Deceased, Plaintiff,**

v.

**TOWNSHIP OF UPPER MORELAND, COUNTY OF MONTGOMERY, PA., and Miles Potter, Defendant and Third-Party Plaintiff,**

v.

**Patrick J. McCABE, James McCabe, Sr., and Bernard McCabe, individually and as co-partners, trading as McCabe Brothers, Third-Party Defendants.**

**Civ. A. No. 23521.**

United States District Court
E. D. Pennsylvania.

Aug. 26, 1960.

262

Edward R. Becker, Becker & Becker, Philadelphia, Pa., for plaintiff.

Michael A. Foley, Philadelphia, Pa., for defendant and third-party plaintiff.

Arthur B. Walsh, Jr., Langhorne, Pa., for third-party defendants.

EGAN, District Judge.

On August 21, 1957, McCabe Brothers, the third-party defendants, were engaged in the construction of certain sewers for the Township of Upper Moreland, Pennsylvania, one of the defendants. As part of this job, a trench about 25 feet deep and four or five feet wide was being excavated. The plaintiff's decedent, an employee of McCabe Brothers, was operating a drill at the bottom of the trench when the sides of the trench caved in and a large quantity of dirt fell upon him and buried him. He died instantly of suffocation and a skull fracture.

In disregard of a state statute, 43 P.S. § 25–2(f), and in violation of regulations of the Pennsylvania Department of Labor and Industry,[1] no shoring had been placed along the sides of the trench to prevent a cave-in, with consequent danger to those working in and about the excavation. The evidence was sufficient to permit the jury to conclude that the fall of dirt which killed the decedent was proximately caused by the lack of shoring.

Suit was brought against Upper Moreland Township, and Miles Potter, the township engineer, on the theory that the defendants were negligent in not requiring McCabe Brothers to install the shoring required by law. Jurisdiction was by diversity of citizenship. The defendants impleaded McCabe Brothers on theories of common-law and contractual indemnity.

The jury returned a verdict of $35,000 in favor of the plaintiff against the defendants, and, in the third-party action, found in favor of the third-party defendants against the third-party plain-

1. Plaintiff's Ex. 8.

tiffs. In other words, they denied defendants indemnity on either theory.

■ The defendants-third party plaintiffs now move for judgment n. o. v. of for a new trial against both the plaintiff and the third-party defendants.

"It is the general rule that the employer of an independent contractor is not responsible for the misconduct of the contractor while the latter is performing under the terms of the contract. * * * The rule is justified on the ground that since the employer does not control the work being performed, he should not be liable for the harm resulting from the substandard performance of the independent contractor. Following this line of reasoning, it is apparent that where the employer has retained some element of control of the job, he should be responsible for the harmful consequences of its performance as a concomitant of the control retained. The Pennsylvania courts have recognized that the employer should be liable where he has retained control of some part of the work, or so interfered with the performance of the job as to have assumed control, and his failure to exercise that control with reasonable care causes harm to others. * * * It is the jury's function to determine whether the employer retained control so as to make him liable." Spinozzi Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., Intervenor v. E. J. Lavino & Co., 3 Cir., 1957, 243 F.2d 80, 82–83.

Crucial to the jury's determination in this case was the question whether the Township had retained sufficient control of the excavation work to impose upon it the duty of complying with the Commonwealth regulations on shoring and the consequent liability for the results of failure to do so. The jury had before it the contract between the Township and McCabe Brothers, which gives the township engineer authority, *inter alia*, over "the manner, performance, rate of progress * * * on the part of the Contractor." The jury also heard testimony concerning the presence on the job of representatives of the Township and the extent to which they exercised control over the work.

From the evidence, the jury apparently decided that the Township had retained sufficient control to make it liable for the absence of shoring. The jury also found defendant Potter, the township engineer, liable to the plaintiff.

■ At this point we should like to dispose of the question of Potter's liability. The theory presented to the jury was that Mark Bradley, the engineer who represented the Township in supervising the work, was the agent of defendant Potter, the township engineer. As a matter of fact, however, Bradley was the employee of the engineering firm of Harris, Henry & Potter, Inc., which firm was designated as the township engineer under the written contract between the township and McCabe Brothers. Although Potter (vice-president of Harris, Henry & Potter, Inc.) held the official position of township engineer, he was not the Township's representative on this particular contract, nor was Bradley his agent. Therefore, while Bradley's negligence in failing to comply with the shoring requirement could be imputed to his employer, Harris, Henry & Potter, Inc., and to that firm's principal, the Township, it could not be imputed to defendant Potter. The evidence of Potter's personal involvement with the excavation operation is not sufficient to find him responsible for the lack of shoring. Accordingly, we will grant Potter's motion for judgment n. o. v. as to plaintiff.

The most substantial arguments of the defendant Township are (1) that it was engaged in a governmental (as opposed to proprietary) function in the construction of the sewer and so enjoyed immunity from suit for damages arising therefrom; and (2) that the Court erred in charging that the township had a nondelegable duty to provide shoring for the trench.

The general rule in Pennsylvania is that a municipality is not liable for the negligent acts of its servants when they are acting for the municipality in its public or governmental capacity, but that there is liability when they are performing duties of a corporate or business character. Hill v. Allentown Housing Authority, 1953, 373 Pa. 92, 95 A.2d 519; Scibilia v. City of Philadelphia, 1924, 279 Pa. 549, 124 A. 273, 32 A.L.R. 981; 26 P.L.E. Mun. Corp. § 531. In other words, if the Township of Upper Moreland was engaged in a governmental function in the construction of this sewer, it would enjoy immunity from the plaintiff's suit.

While there is some confusion in the Pennsylvania decisions as to which functions are governmental and which proprietary,[2] we feel that the construction of a sewer is a proprietary function,[3] and that accordingly no tort immunity attaches thereto.

We turn now to the question of whether we erred in charging the jury that the township had a nondelegable duty to provide shoring for the trench.

The Pennsylvania statute provides:

"All * * * excavations * * shall be properly shored * * * as to provide reasonable and adequate protection to workers employed therein." 43 P.S. § 25–2(f).

"The Department of Labor and Industry shall have the power and its duty shall be to make, alter, amend, and repeal rules and regulations for carrying into effect all the provisions of this act, and applying such provisions to specific conditions." 43 P.S. § 25–12.

Pursuant to the statutory mandate, the Department of Labor and Industry has issued safety regulations for trenches and excavations. The responsibility for compliance is placed "upon both the employer and employe." According to the regulations in force at the time of the accident in suit, the sides of this sewer trench should have been "securely held by shoring and bracing."[4]

The jury was justified in finding that the accident was caused by failure to comply with this regulation. The question of whether or not the duty to insure compliance rested on the Township was presented by the Court to the jury in this manner:

"Normally, the responsibility of providing this sort of safeguard where it is required would rest with the contractor doing the work; and the person for whom the work is being done—the Township in this case—is not responsible for the failure of the contractor to provide an adequate safeguard. This is because the contractor on a job like this is what we call an independent contractor, and that usually means that he is given the plans and specifications which he must follow, and then he does the job with his own employees in a manner that he feels is appropriate.

\* \* \* \* \* \*

"If it [shoring] was a responsibility, ladies and gentlemen of the jury, then I think it was also a responsibility of the municipality, the Township, because I think it could not be delegated and that if the contractor himself violated the law he and the Township would be jointly negligent. They would both contribute to the negligence in failing to observe the regulations with respect to that situation \* \*

---

2. See, e. g., Hill v. Allentown Housing Authority, 1953, 373 Pa. 92, 94, 95 A.2d 519; Boorse v. Springfield Twp., 1954, 377 Pa. 109, 126–135, 103 A.2d 708 (dissenting opinion).

3. Gemmill v. Calder, 1938, 332 Pa. 281, 283, 3 A.2d 7. But see Kunz v. City of Titusville, 1953, 373 Pa. 528, 97 A.2d 42

(operation of incinerator plant); Bandos v. Philadelphia, 1931, 304 Pa. 191, 155 A. 279 (collecting ashes and rubbish); Scibilia v. City of Philadelphia, 1924, 279 Pa. 549, 124 A. 273, 32 A.L.R. 981 (collecting ashes and rubbish).

4. Rule 2(a), Regulations for Trenches and Excavations, 1956 ed., Plaintiff's Ex. 8.

"You will recall that the definition of negligence is the failure to exercise ordinary care under the circumstances. That is what you should determine here, whether there was a lack of the exercise of ordinary care on the part of these defendants in seeing to it that the trench was shored as required by that regulation in cases where the material is not stable.

"If you find that because of the circumstances that I have explained there was no necessity for shoring the trench, then the plaintiff cannot recover, and your verdict must be for the defendants.

"If you determine that in the exercise of ordinary care the Township Engineer should have required the shoring of the trench or, in other words, that the Engineer was negligent in not requiring the shoring, then you will consider the question of whether that negligence was a proximate cause of the cave-in which brought about the unfortunate death of the decedent. There has not been much evidence on what caused the cave-in, but that is a question of fact, and the shoring itself is a question of fact, as I have pointed out, that you will have to determine.

"If you determine that the Engineer's negligence in not requiring shoring was not a proximate cause of the cave-in and that the Township itself was not required to see that the shoring was put in place, then the plaintiff cannot recover, and your verdict must be for the defendants.

\* \* \* \* \* \*

"Let me say that in order to bring in a verdict for the plaintiff you will be obliged to ask yourselves the following questions and answer them 'Yes':

"Under the contract did the Township retain enough control of the job performance in addition to the power of general supervision to impose upon the Township the duty of providing adequate safeguards?

"If you find the answer to that question is 'yes,' then your verdict would be for the plaintiff.

"The second question is:

"Was the Township Engineer negligent in not requiring shoring of the ditch?

\* \* \* \* \* \*

"No. 3:

"Was the lack of shoring a proximate cause of the accident?

"In fact, you must answer all three of these questions 'Yes' in order to find a verdict for the plaintiff. \* \* \*"

■ We now feel that we were in error in charging that the responsibility for shoring could not be delegated by the Township,[5] but we feel that the error was harmless and its effect overcome by the other parts of the charge, which adequately informed the jury that it must determine whether or not the Township retained sufficient control over the work to make it responsible to provide the shoring.

The motions of the defendant Township as to the plaintiff for judgment n. o. v. and for a new trial will be denied.

We now come to a somewhat more vexing problem, that of whether the defendant is entitled to indemnity from the third-party defendants. This issue was submitted to the jury, which returned a verdict in favor of the third-party defendants. On the record before us, we are now of the opinion that this issue

---

5. Spinozzi, Pennsylvania Thresherman & Farmers' Mut. Cas. Ins. Co., Intervenor, v. E. J. Lavino & Co., 3 Cir., 1957, 243 F.2d 80, 82 (dictum). *Contra*, Restatement, Torts §§ 416, 427 (1934). The Pennsylvania cases are more liberal than the Restatement in permitting the employer of an independent contractor to free himself of liability for damages suffered in the course of the contractor's work. Restatement, Torts; Pa.Annot. §§ 409, 413, 416, 418, 426, 427 (1938).

was a legal one for the determination of the Court and not the jury.

The general conditions of the contract between the defendant and the third-party defendants [6] provide for indemnity as follows:

"Article 17—Contractor's Liability:—

"The work in every respect, from the execution of the contract bond and during its progress until final acceptance, shall be under the charge and in care of the Contractor and at his risk. He shall properly safeguard against any or all injury or damage to the public, to any property, material or thing, except where stipulated otherwise in the specifications and shall alone be responsible for any damage or injury from his undertaking of this work to any person or persons or thing connected therewith. He shall indemnify and save harmless the Township * * from all suits or actions at law of any kind. * * * "

"Article 20—Observance of Laws:—

"The Contractor, at all times, shall observe and comply with all Federal and State laws and local ordinances and regulations, in any manner effecting the conduct of the work * * * and shall indemnify and save harmless the Township * * * against any claim or liability arising from or based on the violation of any such law, ordinance, regulation, order or decrees, whether by himself or his employees."

■ Since there are contractual provisions of indemnity, the question of common law indemnity drops out of the case initially.[7]

■ The jury's verdict established that the Township was negligent in not requiring the trench to be shored and that this negligence was a proximate cause of the accident. At the same time, it must be held that the third-party defendants also were negligent in not shoring the trench, since it was their obligation by statute,[8] by regulation,[9] by contract,[10] and by admission of their foreman.[11] Accordingly, the accident was the result of the concurrent, active negligence of the defendant and the third-party defendants.

■ In Pennsylvania the general rule is that a contract of indemnity will not be held to protect the indemnitee against the consequences of his own negligence unless such intent is clearly shown in the contract.[12] The reasoning most frequently offered to support this rule is that to hold otherwise would be to put the indemnitor at the mercy of the indemnitee's negligent conduct,[13] a result which the court would not permit absent a clear showing that the parties so intended. The contractual language in this case is of the type usually held not clearly to show such intent.[14] Given the

6. Plaintiff's Ex. 10.

7. Foster v. Pennsylvania R. R., 3 Cir., 1953, 201 F.2d 727, 731 note 6, affirming D.C.E.D.Pa.1952, 104 F.Supp. 491, 492 note 1; Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 1950, 183 F. 2d 902, 906–907, 20 A.L.R.2d 695.

8. 43 P.S. § 25–2(f).

9. Plaintiff's Ex. 8.

10. Plaintiff's Ex. 10, sub-section B–1, para. 11.

11. N.T. 112.

12. Morton v. Ambridge, 1954, 375 Pa. 630, 101 A.2d 661; Schroeder v. Gulf Refining Co., 1930, 300 Pa. 405, 150 A. 665; Perry v. Payne, 1907, 217 Pa. 252, 66 A. 553, 11 L.R.A.,N.S., 1173; Crew v. Bradstreet Co., 1890, 134 Pa. 161, 19 A. 500, 7 L.R.A. 661; Brown v. Moore, 3 Cir., 1957, 247 F.2d 711, 69 A.L.R.2d 288; Migias v. United States, D.C.W.D. Pa.1958, 167 F.Supp. 482; Burns v. N & L Realty Corp., D.C.W.D.Pa.1958, 160 F.Supp. 203; Foster v. Pennsylvania R. R., D.C.E.D.Pa.1952, 104 F.Supp. 491; Watkins v. Baltimore & O. R. R., D.C.W.D.Pa.1939, 29 F.Supp. 700.

13. Perry v. Payne, supra, note 12.

14. Perry v. Payne, supra note 12; Morton v. Union Traction Co., 1902, 20 Pa. Super. 325; Migias v. United States,

general rule and this language, the law is clear as to the result under various circumstances. Where the loss is caused by the sole negligence of the indemnitor, indemnity is allowed.[15] Where the loss results from the sole negligence of the indemnitee, indemnity is not allowed.[16] Where the loss results from active, or primary, negligence by the indemnitor and passive, or secondary, negligence by the indemnitee, indemnity is allowed.[17] Where the loss arises from active negligence by the indemnitee and passive negligence by the indemnitor, indemnity is not allowed.[18]

The situation here, however, is one of concurrent active negligence of both the indemnitor and the indemnitee. We are unable to find any Pennsylvania authority in point, although two cases have similar factual patterns and warrant discussion.

In Morton v. Union Traction Co., 1902, 20 Pa.Super. 325, the plaintiff contractor, who had erected a smoke stack for the defendant, sued for the balance due. The defendant traction company claimed a set-off by way of indemnity for a judgment against it in another court arising out of the death on the job of an employee of another contractor. The decedent had been working inside at the bottom of the smoke stack. Higher up in the stack was a protective platform designed to keep anything from falling on the decedent and his co-workers. The traction company, for whom the stack was being built, ordered part of the platform removed for its own purpose, and neglected to replace it. Employees of the plaintiff contractor permitted a heavy beam to fall. Because the platform was only partially in place, the beam fell through it and killed the decedent. The decedent's estate sued the traction company and won

a jury verdict. This the traction company wanted to set off by way of indemnity against the balance due the contractor. The construction contract provided that the contractor would indemnify the traction company against any injuries sustained by any persons by or from the contractor, or by negligence or any act of the contractor. The defendant offered to prove negligence on the part of the plaintiff in permitting the beam to fall. Such proof would have given a factual situation similar to the one before us, i. e., one of concurrent active negligence causing the accident. The trial court, however, refused to permit this offered proof and directed a verdict for the plaintiff. On appeal, the Superior Court affirmed. The Court did not discuss the facts in terms of possible concurrent active negligence, but stressed the point that the contractor had not been responsible for the removal and failure to replace part of the platform. This was negligence for which the traction company must bear full responsibility. The Court said that the traction company had the "primary duty" to restore the platform. The Court stated as the controlling rule that:

"the indemnitee must &ast; &ast; &ast; show that the damage &ast; &ast; &ast; was caused by some negligent act of the indemnitor, for which, as between the parties to the indemnity contract, the indemnitor was primarily responsible unless there be in the contract some provision rendering this unnecessary. &ast; &ast; &ast; What they [the contractor] undertook was to indemnify the defendant against the consequences of their own negligence. &ast; &ast; &ast; Good faith required that the other party to the contract should not by its negligence subject

---

supra note 12; Burns v. N & L Realty Corp., supra note 12.

15. See Restatement, Restitution § 95 (1937).

16. Perry v. Payne, 1907, 217 Pa. 252, 66 A. 553, 11 L.R.A.,N.S., 1173.

17. See Baltimore & O. R. R. v. Alpha Portland Cement Co., 3 Cir., 1955, 218 F.2d 207; Restatement, Restitution § 95 (1937).

18. See Morton v. Union Traction Co., 1902, 20 Pa.Super. 325 (semble); Miller v. Pennsylvania R. R., 2 Cir., 1956, 236 F.2d 295.

the contractor to additional risks. Although not expressed in the contract this is reasonably to be implied, otherwise the plaintiffs would be held not only for their own negligence but for the negligence of the defendant. * * * We cannot bring our minds to the conclusion that the parties contemplated liability over for an act or omission, which, but for the negligent act of the defendant would not have been negligent." 20 Pa.Super. 325, 335–36.

The Court discussed the argument that the only possible way in which the indemnification could come into play was by joint tort, and rejected it, pointing out the possibility that the defendant might have been exposed to vicarious liability for negligence of the plaintiff.

"We are inclined to think that the parties had this contingency in mind. So that the argument that the indemnity clause was intended to apply to a case of joint or concurrent negligence, based on the assumption that this is the only possible case to which it can apply, is not conclusive. Upon the whole case we conclude, that it was not the intention of the parties to make the plaintiffs indemnitors against the negligence of the defendant or its servants or against a negligently unsafe condition of the work, for which, as between the parties to the contract, the defendant was primarily responsible." 20 Pa.Super. 325, 337.

Since the Superior Court viewed the case as turning on the defendant's primary negligence, rather than as involving a question of concurrent active negligence, we feel that the case does not shed much light on the law to be applied by us.

Migias v. United States, D.C.W.D.Pa. 1958, 167 F.Supp. 482, was a death action by the estate of an employee of a contractor doing work for the Government. The decedent was killed when a defective scaffold on which he was working gave way. The scaffold was owned by the United States and had been lent to the contractor. The defendant United States joined the contractor as a third-party defendant. The Court, sitting without a jury, found the defendant and the third-party defendant guilty of concurrent active negligence in permitting the use of the defective scaffold. The plaintiff was awarded judgment against the United States. The question of liability over rested on the applicability, under Pennsylvania law, of the indemnity provision in the contract:

"In the event the contractor elects to use the crane service under the conditions specified above: (a) The contractor shall indemnify, hold harmless and defend the Government against any claims, demands or liabilities against the Government arising out of the use or operation of the crane during the performance of this contract, excepting only claims for injuries to Government employees not due to the fault or negligence of the Contractor. * * *"

The Court was unwilling to construe this indemnity clause as covering use of the scaffold.

"The written contract provided that the contractor could make use of the crane service if he so desired. The use of the scaffold was simply an oral understanding reached by the parties. The parties had a discussion as to the maintenance and repair of the scaffold, but no discussion as to liability in the event of the collapse of the scaffold. It is true they did indicate that it was subject to all terms and conditions of the paragraph concerning the crane service." 167 F.Supp. 482, 488.

The Court then cited the Pennsylvania rule that indemnity against personal injuries should not be held to indemnify against the negligence of the indemnitee unless it is so expressed in unequivocal terms, and found in the evidence before it that there was no such expression. Accordingly the Government's claim for indemnity was denied.

Unfortunately for our purposes, the opinion is not clear whether the Court felt that the indemnity clause did not apply to the use of the scaffold and so was not at all to be considered, or that while it might have applied to the scaffold the language of the clause itself did not show an intent to indemnify against the Government's negligence.

A search of the various authorities has failed to locate any other cases involving the application, under Pennsylvania law, of similar indemnity contracts to situations of concourrent active negligence.[19]

There are several cases in New York, however, that set forth that state's rules for such situations.

The facts in Walters v. Rao Electrical Equipment Co., 1942, 289 N.Y. 57, 43 N.E.2d 810, 143 A.L.R. 308, are strikingly similar to those of Morton v. Union Traction Co., 1902, 20 Pa.Super. 325. The plaintiff, an employee of a contractor on a building construction job, was injured through the concurrent negligence of the general contractor and a subcontractor, both of whom he sued. The general contractor failed to comply with a statutory requirement [20] for planking over of steel floor beams; the subcontractor's employee negligently dropped a piece of pipe which fell through the unplanked space and injured the plaintiff. The plaintiff won a verdict against both defendants. The general contractor cross-claimed against the subcontractor for indemnity. The indemnity contract provided that the subcontractor would hold the general contractor harmless for any personal injury caused by the subcontractor or his employees, whether by negligence or otherwise.

The Court held that any intention to extend the subcontractor's liability beyond that for acts of his employees would have to be unequivocally expressed. "No such intention is here revealed. The subcontractor was not liable for the negli-

gence of the general contractor even though concurrent." 289 N.Y. 57, 61, 43 N.E.2d 810, 811. The Court went on to say that the general contractor's violation of the statute was a breach of a primary nondelegable duty, and that the general contractor and the subcontractor were joint active tort feasors. Indemnity was denied.

The three dissenting judges thought that the affirmative cause of the accident was active misconduct by the subcontractor and that the general contractor's liability to the plaintiff was the result of omission of its secondary duty to provide the safety measures. They felt that the general contractor was entitled to recover on the basis that "indemnity is given to the person morally innocent but legally liable, as against the actual wrongdoer whose misconduct had brought the liability upon him." 289 N.Y. 57, 62, 43 N.E.2d 810, 812.

It is not clear from the majority opinion whether the Court was refusing indemnity on the ground that the indemnity provision could not be construed to apply to a case of concurrent active negligence, or on the ground that the general contractor would not be permitted to escape liability for violation of a "primary non-delegable duty."

A similar problem came before the New York Court the following year in Schwartz v. Merola Brothers Construction Corp., 1943, 290 N.Y. 145, 48 N.E.2d 299, another 4–3 decision. The defendant bank contracted with a general contractor to renovate the bank's building. The contractor engaged a subcontractor, who in turn hired a sub-subcontractor. The plaintiff, a pedestrian, was injured by materials negligently placed on the sidewalk; he sued the bank and all three contractors. The bank cross-claimed for indemnity against the other three defendants. The subcontractor cross-claimed against the sub-subcontractor.

---

19. 18 P.L.E. Indemnity § 4, at page 173 note 38 (the case excerpted does not in fact concern negligence by both, as indicated) ; 27 Am.Jur., Indemnity § 15; 42

C.J.S. Indemnity § 12, at pp. 580-581; Annotation, 175 A.L.R. 34 (1947).

20. Section 241, N.Y. Labor Law. McKinney's Consol.Laws, c. 31.

The plaintiff won a verdict against all four defendants.

The Court found under the facts that the sub-subcontractor was actively negligent, that the bank and the general contractor were only passively negligent, and that the subcontractor was at least passively negligent. Accordingly, the plaintiff was entitled to judgment against all defendants.

The Court discussed the general rule that an owner is not liable for the negligence of an independent contractor unless the duty of care in performing the work is nondelegable.[21] But here the owner of the building had notice of the dangerous condition which had been created on the sidewalk and so had a nondelegable duty to the plaintiff to correct the condition.

The bank's cross-claim against the general contractor was based on a written contract of indemnity, whereby the contractor agreed to indemnify the bank against loss by reason of "liability imposed by law" upon the bank for damages resulting from any act or omission of the contractor, his employees, or agents. The Court considered the term "liability imposed by law" to include "the total liability imposed by law" on the bank, and said therefore that the indemnity agreement was sufficiently broad to entitle the bank to indemnity "unless the Bank was guilty of active negligence."

> "While the parties are free to contract as between themselves for the ultimate burden of liability due to negligence, yet in the absence of explicit language to the contrary, courts will not interpret an indemnity agreement as a promise by the indemnitor to save harmless the indemnitee on account of the active negligence of the latter." 290 N.Y. 145, 154, 48 N.E.2d 299, 303.

The Court held that since the bank was guilty only of passive negligence, it was entitled to indemnity from the contractor on the basis of the indemnity contract.

The Court said that while the owner of a building has a nondelegable duty to protect pedestrians, indemnity would be given, even in the absence of a contract of indemnity, against the principal wrongdoers to one less culpable although both are equally liable to the injured party. For this reason, the bank was held entitled to common-law indemnity from the sub-subcontractor, who had been actively negligent. The bank was not granted indemnity against the subcontractor, since it had failed to show that the subcontractor was guilty of active negligence.[22]

The dissenting judges argued that the indemnity contract did not state that the contractor would indemnify the bank against its own negligence and so should not be effective for that purpose. With regard to the bank's claim for common-law indemnity against the sub-subcontractor, the dissent felt that the dangerous condition on the sidewalk was a nuisance of which the bank had had full knowledge and that accordingly the bank had violated a "primary, active and nondelegable" duty by not correcting it.

In Semanchuck v. Fifth Ave. & Thirty-Seventh St. Corp., 1943, 290 N.Y. 412, 49 N.E.2d 507, decided six weeks after Schwartz, supra,[23] the defendant owner of land was engaged in erecting a building thereon, and had engaged the defendant contractor for various phases of the work. The plaintiff, an employee of a subcontractor, was injured because of the failure of the contractor and the owner to comply with a duty imposed by § 241, N.Y. Labor Law, on "all contractors and owners" to provide certain safe-

---

21. See Restatement, Torts, §§ 409, 416, 417, 426.

22. And the subcontractor's cross-claim for common-law indemnity against the actively-negligent sub-subcontractor was denied because the subcontractor had failed to prove that it was not guilty of active negligence.

23. The membership of the court was the same in Walters, Schwartz, and Semanchuck.

ty measures for employees.[24] The contractor had agreed with the owner to provide all necessary safety measures. Judgment was recovered against both defendants. The owner claimed indemnity from the contractor on the basis of the contractor's written obligation to indemnify the owner for all expenses arising from injury resulting from the work.

In a unanimous decision, the New York Court of Appeals applied the Walters rule, supra, and held that there was no right of indemnity. The Court found a statutory intent that correlative obligations of joint wrongdoers based on distinctions between "active" and "passive" negligence should not apply, within the field covered by the statute, to a violation of the statutory command. The Court went on to say that the problem, as in Walters, was whether the indemnity agreement "unequivocally expressed" the intention that one tortfeasor should provide to his fellow tortfeasor indemnity against liability arising from the other tortfeasor's failure to perform a "positive active duty" imposed by statute. The Court concluded that, under the terms of the indemnity agreement, the owner was not entitled to indemnity from the other " 'joint active tort feasor.' "

The Court distinguished the Schwartz case, supra, on the ground that there, although the indemnitee was subject to liability to the injured party for failure to perform a nondelegable duty imposed by law, that nondelegable duty was not a " 'positive duty' " imposed by § 241 of the N.Y. Labor Law. The Court said that its decision in Schwartz was that the rule applied in the Walters case, supra, should not be extended to deny indemnity in those cases in construction and demolition work involving failure to perform a nondelegable duty not arising under the Labor Law. The Court then restated the rule as follows:

"[T]he duty imposed upon both the owner and the contractor under the provisions of section 241 of the Labor Law is an active primary duty and any agreement to provide indemnity for failure to perform such active primary duty must be unequivocally expressed." 290 N.Y. 412, 423, 49 N.E.2d 507, 510–511.

This language suggests that the general rule for indemnity between concurrent active tortfeasors would be that the intention to provide such indemnity must be unequivocally expressed. That, of course, is the rule announced in Schwartz v. Merola Brothers Construction Corp., supra, and indicated (along with legislative intent) as controlling in Walters v. Rao Electrical Equipment Co., supra.

McFall v. Compagnie Maritime Belge, 1952, 304 N.Y. 314, 107 N.E.2d 463, was the suit of a longshoreman injured by fumes from drums of carbon tetrachloride being loaded onto a vessel. He sued the bareboat charterer, the charterer's booking agent, the manufacturer and shipper of the goods, and the purchaser. There were various cross-claims among the defendants for indemnity, and all four defendants joined the plaintiff's employer as a third-party defendant. The jury found for the plaintiff against the charterer and the manufacturer, and for the charterer against the manufacturer and the plaintiff's employer. The manufacturer's claim against the plaintiff's employer was dismissed.

The New York Court of Appeals considered the claims of the charterer and the manufacturer for indemnity. In interpreting the jury's findings, the Court concluded that the charterer was negligent in failing to warn the longshoremen of the potential danger from the carbon tetrachloride, the manufacturer was negligent in the use of inadequate drums for shipping the cargo, and the plaintiff's employer was negligent in handling the drums. There being no express contracts of indemnity, the Court said there was an implied contract of indemnity in favor of a wrongdoer guilty of passive negli-

---

24. The same law as in Walters v. Rao Electrical Equipment Co., 1942, 289 N.Y. 57, 43 N.E.2d 810.

gence against the one who has been actively negligent. The Court held that the evidence indicated that the manufacturer and the plaintiff's employer were guilty of active negligence, while the charterer was guilty of only passive negligence. This being the case, there was no right of indemnity between the manufacturer and the plaintiff's employer, but the charterer was entitled to indemnity from both of them.[25]

In Miller v. Pennsylvania R. R., 2 Cir., 1956, 236 F.2d 295, the defendant building owner had contracted with the plaintiff's employer for certain work on the building. The contract provided that the contractor would take all precautions against accidents. There was no indemnity clause as such. The plaintiff was injured on the job and sued the building owner, who joined the employer as a third-party defendant. The trial court found the defendant negligent and the third-party defendant not negligent, so it dismissed the third-party complaint.[26]

The Court of Appeals for the Second Circuit affirmed on the basis of the trial court's finding that the defendant's negligence was a proximate cause of the injury, holding that it was not necessary to consider whether the third-party defendant was free from negligence.

"Even if Spooner [the third-party defendant] was negligent Pennsylvania's negligence in maintaining the equipment would bar it from indemnity.

"Since this is a diversity case New York law is controlling. The New York cases make it quite clear that a party guilty of active negligence has no right of indemnity against another whose concurrent negligence contributed to the injury. E. g. McFall v. Compagnie Maritime Belge, 1952, 304 N.Y. 314, 328–329, 107 N.E.2d 463, [471]." 236 F.2d 295, 297.

The Court referred to the contractor's undertaking to protect against accidents and said:

"Even if this can be construed as a contract to indemnify Pennsylvania for injuries resulting from Spooner's negligence in carrying on its work, it provides no basis for charging to Spooner injuries produced by Pennsylvania's own active negligence. Under New York law a person is not entitled to be indemnified against a liability to which his own active negligence contributed unless the contract expresses that intention beyond all doubt. Semanchuck v. Fifth Avenue & Thirty-Seventh Street Corporation, 1943, 290 N.Y. 412, 49 N.E.2d 507." 236 F.2d 295, 298.

If we were to apply to the case before us the rule extracted from the New York cases, viz., an indemnity contract will not be construed to provide indemnity for the consequences of joint active negligence unless the contract unequivocally expresses such an intent, we would hold in favor of the third-party defendants, because such intent is not unequivocally expressed in the indemnity clauses. We are not statisfied, however, that this is the appropriate rule. In the case of joint active negligence, the argument that the indemnitor should not be made an unwilling insurer of the indemnitee's negligence [27] is not so persuasive, since the

25. The court also discussed the plaintiff's employer's defense that because the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901–950, provided the sole remedy for the plaintiff against his employer, to permit the defendants to recover indemnity against the employer would be to make the employer liable indirectly for damages which could not be recovered directly. The court held that the New York rule and the federal rule both rejected this defense. Contra,

Brown v. Dickey, 1959, 397 Pa. 454, 155 A.2d 836.

26. The court added that even if the accident had been caused solely by negligence of the third-party defendant, indemnity would be refused because the building owner had a contractual obligation to obtain liability insurance.

27. Perry v. Payne, 1907, 217 Pa. 252, 66 A. 553, 11 L.R.A.,N.S., 1173.

indemnitor has it within his own power to prevent the loss. But on the other hand, we are not willing to say that the parties here intended that the Township should be indemnified for losses which *it* could have prevented by the exercise of reasonable care. We conclude that the situation of joint active negligence was not contemplated and does not fall within the scope of the indemnity provisions of the contract before us; that is to say, we cannot infer either that the parties intended indemnity in such circumstances or that they intended that there be no indemnity. We feel, in short, that the contract is silent with regard to indemnity for this accident.

Such being the case, we turn to common-law principles for resolution of the third-party action.

In Pennsylvania, there is no right of indemnity between parties guilty of concurrent active negligence.[28] Helz v. City of Pittsburgh, 1956, 387 Pa. 169, 127 A.2d 89; Builders Supply Co. v. McCabe, 1951, 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319. There is, however, a right of contribution. Goldman v. Mitchell-Fletcher Co., 1928, 292 Pa. 354, 141 A. 231; Builders Supply Co. v. McCabe, supra, 366 Pa. at page 335, 77 A.2d at page 374 (dictum); see Uniform Contribution Among Tortfeasors Act, 12 P.S. § 2082. The right of contribution against the employer of the injured party is limited, however, to the extent of the employer's workmen's compensation liability.[29] Brown v. Dickey, 1959, 397 Pa. 454, 155 A.2d 836; Maio v. Fahs, 1940, 339 Pa. 180, 14 A.2d 105.

Accordingly we hold that the defendant is entitled to contribution from the third-party defendants to the extent of their workmen's compensation liability. The Township's motion for judg-

ment n. o. v. against the third-party defendants will be granted to that extent. The Township's motion for a new trial against the third-party defendants will be denied.

As indicated above, defendant Potter's motion for judgment n. o. v. as to plaintiff will be granted.

Counsel will submit a form of order.

28. The rule is usually stated that there is no right of indemnity between joint tortfeasors. An employer covered by workmen's compensation whose negligence causes injury to an employee is, strictly speaking, not a tortfeasor, although cases often refer to the employer as such. Webster's New International Dictionary (Merriam 2d ed. 1934)]; Radin, Law Dictionary (1955); cf. 12 P.S. § 2082. But see Maio v. Fahs, 1940, 339 Pa. 180, 14 A.2d 105.

29. Note that the New York and federal rules are contra, supra note 25.